UNITED STATES of America,
Appellee,

v.

Carol Lee RAGLAND
and
Arthur Elwood Williams, Appellants.

No. 8545.

United States Court of Appeals
Fourth Circuit.

Argued May 29, 1962.

Decided Aug. 21, 1962.

R. R. Ryder, Richmond, Va. (Martin & Ryder, Richmond, Va., on the brief) for appellants.

Arthur G. Murphy, Asst. U. S. Atty. (Joseph D. Tydings, U. S. Atty., and J. Edward Davis, Asst. U. S. Atty., on the brief), for appellee.

Before BOREMAN and J. SPENCER BELL, Circuit Judges, and BARKSDALE, District Judge.

BARKSDALE, District Judge.

On January 5, 1962, pursuant to a jury's verdict of guilty, a judgment of conviction was entered against Carol Lee Ragland, Arthur Elwood Williams and Charles Royland Liskie of conspiracy to possess sugar intended to be used in the production of distilled spirits (18 U.S. C.A. § 371; 26 U.S.C.A. § 5686(a)), and of the substantive offense of unlawful possession of sugar intended for use in violating the internal revenue laws of the United States (26 U.S.C.A. § 5686 (a); 18 U.S.C.A. § 2), and prison sentences were imposed. From this judgment of conviction, Ragland and Williams have prosecuted this appeal, and the sole question before this court is whether or not the evidence was sufficient to justify their conviction. The conspiracy count originally included three others, one of whom died before the trial, and the two others, Robert Victor Somers and Charles Howard Simpson, entered pleas of guilty. The substantive count included two others, one of whom had died before the trial, and the other one, Somers, also entered a plea of guilty to that count. The appellants, Ragland and Williams, and the other defendant, Liskie, entered pleas of not guilty and were tried jointly. Neither one of the three testified or introduced any testimony in his own behalf. Somers, who had pled guilty, testified for the Government. Since the jury found the defendants guilty, the evidence must be considered in the light most favorable to the Government.

Bearing that principle in mind, the facts which the jury might properly have found, may be briefly stated as follows:

In October 1960, defendant, Robert Victor Somers (who pled guilty and testified for the Government), and defendant, Richard D. Victor III (who died before trial), met in Pittsburgh, by prearrangement, and agreed that Somers would go to work for Victor. Victor explained to Somers that he was doing business under the name of Alleghany Food Products Company and that he was engaged in the purchase and sale of sugar in Baltimore. It was agreed that Somers would come to Baltimore and look after purchases and sales of sugar there. Victor told Somers "that Alleghany Food Products Corporation was a nonexisting corporation, that it was merely a name, and a front that would be used so that we could legally purchase sugar." Victor further told Somers that he should establish an office or a residence in Baltimore, and "periodically he would contact me and let me know when men were coming in from different areas with trucks to pick up the sugar". Somers was instructed that when men came to him to purchase sugar, he was to take their money and purchase American Express Company money orders, then go to the Canton Railroad Docks, present the money and get purchase orders for the sugar and permit the men to load it. Victor did not tell Somers specifically who the men were who would come to Baltimore to purchase sugar, but told him that they were going to be selling it to bootleggers.

On November 14, 1960, pursuant to this arrangement, Victor came to Baltimore, and put up with Somers at the Lord Baltimore Hotel, where they spent the night. The next morning, they went to a lunch room located on the property of the Canton Railroad Yard, and there met defendants Ragland, Williams and Liskie. After a conversation in the

lunch room, in which Somers took no part, Victor, Somers, together with Ragland, Williams and Liskie, traveled by cab to the American Express Company office. On the way there was a general conversation about purchasing the sugar and Williams handed a roll of money to Victor. All of them went into the office of the American Express Company and Victor purchased two money orders in the sum of approximately $1,350.00 each. From there, they returned to the Canton Railroad Yard, and Victor and Somers went into the office and presented the money orders to an employee, who, in turn, gave them purchase orders for the sugar. One of the purchase orders was used for the purchase of 15,000 pounds of sugar, which was promptly loaded on a truck operated by Liskie, who signed the receipt for the sugar. This truck carried Virginia license plates and was registered in the name of one Benny Goens of Hanover, Va. During the loading of the sugar on the truck, Williams and Ragland waited in, or near, a blue Ford automobile bearing Virginia license plates, which belonged to Ragland, parked on the Canton Railroad property. From time to time, Williams and Ragland were seen to observe the loading of the sugar, although they took no active part in it. As soon as the truck had been loaded, Liskie drove it away, and Williams and Ragland followed the truck in the blue Ford, keeping as closely behind it as they could "without bumping" it.

Having been previously alerted, an officer of the Maryland State Police, observed the truck operated by Liskie and the blue Ford operated by Williams, Ragland riding on the front seat with him. The officer followed the truck and Ford for approximately three-fourths of a mile, and observed that the Ford closely followed the truck, keeping only the length of a car, or a car and a half, behind it. The officer stopped the truck and Ford car near Laurel, Md., and took both vehicles with their occupants to the Maryland State Police Barracks nearby. There it was noted that the truck was carrying a load of 15,000 pounds of sugar, and that the Ford car carried unusual equipment. It was equipped with heavy-load springs, a large heavy-duty coil spring with a center shock absorber on the rear axle designed to allow the car to ride level while carrying a heavy load, the arm rests adjacent to the rear seat had been removed and a switch had been installed under the cowl which operated to turn off all rear lights of the vehicle while leaving the front lights on. In the glove compartment of the Ford, were two publications of the Internal Revenue Service designed to warn sellers of sugar of its use in the manufacture of illicit liquor.

Upon being questioned, neither Ragland nor Williams gave any explanation of why they had come from Virginia to Baltimore to purchase sugar, gave no explanation of the unusual equipment on the Ford automobile, no explanation of their presence at the time of the loading of the sugar on the truck, no suggestion of any legitimate reason for the purchase of such a large quantity of sugar, nor why they were following the truck so closely. Ragland, Williams and Liskie were taken into custody by an agent of the Alcohol Tax Unit, and in due time their trial and conviction followed.

 To justify the jury's verdict of guilty, on both the conspiracy count and the substantive offense count, it was necessary that the Government's evidence prove beyond a reasonable doubt that the defendants acted in concert pursuant to a common understanding, that one or more of the overt acts charged were committed, that the defendants possessed the 15,000 pounds of sugar, and that the sugar was intended for use in violation of the internal revenue laws of the United States. The Government relied on circumstantial evidence, which type of evidence is, of course, sufficient to support the verdict, although it does not exclude every reasonable hypothesis consistent with innocence. Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150; Moore v. United

States, 4 Cir. (1959), 271 F.2d 564, 568. There does not seem to be any doubt that the defendants entered into an informal, verbal agreement and understanding to acquire and possess the sugar. Several of the overt acts charged were clearly proven. Nor does there seem to us to be any serious question that the evidence proved beyond a reasonable doubt that Liskie, Ragland and Williams possessed the sugar. Liskie took actual possession of the sugar when it was loaded on the truck operated by him, and he receipted for it. Ragland and Williams participated in the arrangements for the purchase of the sugar, Williams paid for it, both Ragland and Williams were present overseeing the loading of the sugar, both undertook to convoy the sugar-laden truck out of Baltimore, traveling in an automobile owned by Ragland and operated by Williams, which circumstances seem ample to support a finding of constructive possession on the part of both Ragland and Williams. The only serious question, if indeed it be serious, is the question of the sufficiency of the proof that the sugar was intended for use in violation of the internal revenue laws. As was said in Moore v. United States, supra, p. 568:

"It is not necessary, in appraising the sufficiency of the evidence, that this court be convinced beyond a reasonable doubt of the guilt of the defendant. Bell v. United States, 4 Cir.1950, 185 F.2d 202. The question is whether the evidence, construed most favorably for the prosecution, is such that a jury (or trial judge) might find the defendant guilty beyond a reasonable doubt. Bell v. United States, supra; United States v. Brown, 2 Cir.1956, 236 F. 2d 403; Stoppelli v. United States, 9 Cir.1950, 183 F.2d 391."

■ As a matter of fact, this court is convinced from the evidence, beyond a reasonable doubt, that the defendants were guilty.

■ The evidence does not disclose the actual residence of either Ragland or Williams. However, both vehicles involved bore Virginia license plates, and the truck was titled in the name of a resident of Hanover, Virginia, near Richmond. It would be strange indeed for residents of that vicinity to come all the way to Baltimore to purchase sugar, and, as was said in United States v. Sawyer, 294 F.2d 24, 30:

"* * * it would be a matter of common knowledge that 1260 pounds of sugar would be much more than necessary to meet the normal requirements of one family."

Certainly, the possession of 15,000 pounds of sugar would negate any thought of family use.

■ Some of the evidence tended to show that Williams and Ragland intended to use this large quantity of sugar *themselves* in the illicit manufacture of liquor. The ownership by one, and the operation by the other, of the convoying Ford automobile equipped with overload springs and the switch for extinguishing the rear lights without extinguishing the front ones, indicated that they were themselves in the illicit whiskey business. Also, the presence in the glove compartment of this car of the Government pamphlets in regard to the use of sugar in the illicit manufacture of liquor was another such circumstance. However, it is immaterial whether the sugar was intended for use in violation of the revenue laws by Ragland and Williams, or by others. In the somewhat similar case of DeHart v. United States, 4 Cir., 1956, 237 F.2d 227, 228, this court said:

"It would, of course, be no defense that he (the defendant) intended to sell it (the sugar) to illicit distillers instead of to use it himself in illicit distilling, Backun v. U. S., 4 Cir., 112 F.2d 635, 637; and the circumstances clearly indicate that he knew that it was intended for this unlawful use. To hold otherwise would be to close our eyes to facts which are susceptible of no other reasonable explanation and to stultify the ad-

ministration of justice in the view of all right thinking men.

See also Snead v. United States, 4 Cir., 1954, 217 F.2d 912, 914.

It is noteworthy in this case that neither defendant testified, nor offered any evidence at all, to explain their possession of this large quantity of sugar. As was said in Moore v. United States, supra (271 F.2d p. 568):

"In a criminal case the accused is protected, at every stage of the trial, with a presumption of innocence and until he is proven guilty beyond a reasonable doubt by proper and competent evidence. No inference of guilt can be drawn from the mere fact that the accused did not testify in his own behalf. These are fundamental principles which require no citation of authority."

■■ The protection against self-incrimination embodied in the Fifth Amendment to the Constitution is a fundamental right, which has been, and should be, jealously guarded by the courts. Not only is it universally held that a defendant in a criminal case may not be required to testify, but it is equally well recognized that he need not testify, that the prosecuting attorney may not comment on his failure to testify, and if desired by the defendant, the court will charge the jury that no inference of guilt may be drawn from his failure to testify. These are fundamental rights which must not be frittered away.

Nevertheless, protection of those fundamental rights does not mean that the failure of the defendant in a criminal case to explain highly suspicious circumstances, must be entirely disregarded by the trier of fact. As was well said in Moore v. United States, supra, (p. 568):

"If it (the evidence) be sufficient to support an inference of guilt and the defendant fails to offer a reasonable explanation consistent with innocence, such failure may be con-

sidered by the trier of fact. Wilson v. United States, 1896, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090; Jenkins v. United States, 4 Cir., 1932, 58 F.2d 556."

In the Wilson case, the court said (162 U.S. p. 620, 16 S.Ct. 898):

"The trial judge did not charge the jury that they should be controlled by the presumption arising from the fact of the possession of the property of one recently murdered, but that they might consider that there was a presumption and act upon it, unless it were rebutted by the evidence or the explanations of the accused."

In the Jenkins case, the trial court charged the jury as follows:

"I charge you gentlemen that the defendants have a right to either testify or refrain from testifying as they deem proper and you are not to convict them because they did not testify, no inference is to be drawn from the fact that they did not testify. I charge you however, that the rule in this Court is that, if the case, as made out for the Government, is of such a nature as to warrant an inference of guilt, unless there is some contradiction by witnesses, the rule does not prevent the jury from considering the lack of contradiction on the part of witnesses for the defense; but under the rule you cannot take it for granted that the defendants are guilty because they did not testify."

On appeal, this court said:

"This was a proper instruction, and properly and fairly stated the law applicable to the proven facts of the case. Graves v. U. S., 150 U.S. 118, 14 S.Ct. 40, 37 L.Ed. 1021."

In the Graves case, quoting from Commonwealth v. Webster, 5 Cush., 295, 316, the court said:

" 'But when pretty stringent proof of circumstances is produced

tending to support the charge, and it is apparent that the accused is so situated that he can offer evidence of all the facts and circumstances as they existed, and show, if such was the truth, that the suspicious circumstances can be accounted for consistently with his innocence, and he fails to offer such proof, the natural conclusion is that the proof, if produced, instead of rebutting, would tend to support the charge.' The rule even in criminal cases is that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable. 1 Starkie on Evidence, 54; People v. Hovey, 92 N.Y. 554, 559; Mercer v. State, 17 Tex.App. 452, 467; Gordon v. People, 33 N.Y. 501, 508."

See also Crawley v. United States, 4th Cir. (1959), 268 F.2d 808, 811.

It would seem that only Ragland and Williams, and possibly Liskie, knew for what use the suspect sugar was intended, and if the intended use was legitimate, it was peculiarly within their power to prove that fact, either by their own testimony or that of others. Faced with the testimony of the Government, we are of the opinion that a situation was presented where the defendants remained silent at their peril. Holland v. United States, supra, 348 U.S. p. 139, 75 S.Ct. 137, 99 L.Ed. 150.

It is our conclusion that the Government's evidence was sufficient in itself to support the jury's verdict. But since the jury also had the right to consider, and doubtless did, that the defendants made no explanation whatever of their acquisition and possession of this large quantity of sugar, there seems to be no doubt that the jury's verdict was amply supported. It follows that the judgment of the District Court is

Affirmed.