**UNITED STATES of America,
Appellee,**

**v.**

**Roy Braswell SHERMAN, Appellant.**

**No. 13451.**

United States Court of Appeals
Fourth Circuit.

Argued Dec. 4, 1969.

Decided Jan. 30, 1970.

Certiorari Denied May 18, 1970.
See 90 S.Ct. 1717.

Harry E. Atkinson, Newport News, Va. (court-appointed counsel), for appellant.

Roger T. Williams, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on brief), for appellee.

Before WINTER and BUTZNER, Circuit Judges, and MERHIGE, District Judge.

PER CURIAM:

Sherman, convicted of placing another's life in jeopardy in the course of a robbery in violation of 18 U.S.C. § 2114, and assault with intent to commit murder in violation of 18 U.S.C. § 113(a), contends that the evidence was insufficient to sustain the jury's verdict of guilty; that the trial court erred in admitting, over his objection, evidence of a line-up identification and a photograph of same, which he argues was staged in such a manner as to be violative of his constitutional rights to due process. We find the evidence ample to sustain the conviction and perceive no error by the trial court in the admission of evidence.

At approximately noon on December 30, 1968, at Langley Air Force Base, Virginia, having just emerged from the bank building, transporting two bags of one-dollar bills and coins amounting to over $1,400 for use at the base commissary, two military personnel entered a government vehicle. Before driving off they were accosted by a lone gunman, clad in an air force parka, fatigue trousers, and wearing a woman's nylon stocking over his face. The gunman fired a shot, opened a door of the truck in which the military men were seated, and demanded "the money." When one of the men bent to get a bag of money from the floor, the gunman shot him, ordered the other soldier to turn over his weapon, shot him, grabbed one of the money bags, and ran, pursued by an off-duty air policeman who had emerged from the bank about the time of the shooting.

During the foot chase, the gunman, who discarded the stocking mask, was observed several times by the pursuing air policeman who got within twenty-five yards of him before the man entered a large hangar and was lost from view.

During the course of the chase, a Sgt. Buckholtz, who had heard the gunshots and seen the profile of the gunman, joined in.

The defendant was seen by another witness in a passageway of the hangar that the robber had entered and was apprehended outside the building. A search of the building revealed a stocking mask, an air force parka, gloves, a small gun, and the bag of money taken in the robbery. Hair found in the mask revealed that it compared with the defendant's hair in sixteen individual characteristics.

At the time of his arrest, defendant was wearing a mustache and goatee and wore his hair long in what he described as an Afro cut. At the trial he appeared clean shaven and was wearing his hair short. Shortly after his arrest, Sherman was advised of his rights and appeared in a line-up consisting of six Negro airmen, where he was identified by at least three witnesses as the man who fled from the scene of the robbery.[1]

At the trial one witness, Buckholtz, identified him as the man he saw running from the scene.

In considering the sufficiency of the evidence we do not determine whether it convinces us of guilt beyond a reasonable doubt, but only that the evidence would permit the triers of fact to find the defendant guilty beyond a reasonable doubt. United States v. Ragland, 306 F.2d 732 (4th Cir. 1962) cert. den. 371 U.S. 949, 83 S.Ct. 504, 9 L.Ed. 2d 498. The verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support the findings of guilt. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Where the evidence construed most favorably for the government is such that the jury might find the defend-

---

1. The evidence discloses that Sherman was advised of his right to counsel, Court-appointed if necessary, to be present before participating in the line-up. He voluntarily chose to participate without benefit of counsel. [Tr. 450]

ant guilty beyond a reasonable doubt, then the evidence is sufficient to sustain a finding of guilt. Bell v. United States, 185 F.2d 302, 310 (4th Cir. 1950); United States v. Ragland, *supra*; United States v. Levinson, 405 F.2d 971, 985 (6th Cir. 1968); United States v. Hammond, 419 F.2d 166 (4th Cir. 1969). Applying the aforementioned principles to the evidence that was before the jury, we conclude that there was ample and sufficient evidence to support the conviction.

■ The evidence of the line-up identification of which Sherman complains was properly admitted in the course of the trial. The line-up consisted of six Negro males, all dressed in a similar manner; that is, air force fatigue uniforms. Admittedly, one of the factors considered by the witnesses in their selection of Sherman from the line-up was based upon the length of his hair, which was longer than that of any other member of the line-up. Defendant ignores, however, that the evidence before the Court and the jury was that in each instance each of the witnesses based his identification on the over-all physical appearance of the defendant, including height, weight, complexion, etc. A casual view of the photograph of the line-up exhibited to this Court shows that the six persons included therein had generally similar physical characteristics. The fact that several of the participants in the line-up were members of the military company of one or more of the witnesses is not in and of itself evidence of a lack of over-all fairness. The test as to the propriety of a line-up is whether or not the totality of circumstances gives rise to a very substantial likelihood of irreparable misidentification. See Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

Prior to United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U. S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the matter of an extra-judicial identification affected only the weight, not the admissibility, of *identification* testimony at the trial. The rationale of those cases had to do with an accused's entitlement to counsel at a critical stage of the prosecution. Here, as in the case of Simmons v. United States, *supra*, the appellant's contention is that under the circumstances the identification procedure was allegedly so unduly prejudicial as to fatally taint his conviction. As stated in Stovall v. Denno, 388 U.S. 293, 308, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and this Court's opinion in Palmer v. Peyton, 359 F.2d 199 (4th Cir. 1966), and reiterated in the *Simmons* case, any such claim must be evaluated in the light of the totality of surrounding circumstances.

■ In view of the thorough exploration by counsel as to the makeup of the line-up, as well as the fact that there was ultimately introduced for the jury's perusal a picture of the line-up, we cannot say that the identification procedure was either so impermissibly suggestive, or, for that matter, suggestive in any manner, as to give rise to a very substantial likelihood of irreparable misidentification. The fact that the jury had the benefit of the picture of the line-up, and found the defendant guilty, vitalizes our conclusion. The defendant can hardly complain of the government's introducing evidence, such as the photograph of the line-up, in order to permit a witness to identify the person whom he had identified at the time of the line-up, particularly when at the time of the trial there had been radical changes made in his appearance. As commendable as it perhaps was for his counsel to, as he stated in his argument before the bar of this Court, "clean up the defendant so as to make him presentable," he cannot be heard now to complain that the jury was not entitled to see what the defendant looked like at the time he was pointed out in the line-up, immediately after the alleged offense.

The defendant has had a fair and impartial trial. He is entitled to no less, and the courts can give no more.

The judgment of conviction is affirmed.

Affirmed.