Marvin Curtis HOLDER, Petitioner,

v.

A. E. SLAYTON, Jr., Superintendent Virginia State Penitentiary, Respondent.

Civ. A. No. 72–C–28–D.

United States District Court,
W. D. Virginia,
Danville Division.

Sept. 12, 1972.

Marvin Curtis Holder, pro se.

James E. Kulp, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION

WIDENER, Chief Judge.

On September 22, 1970, petitioner was tried for robbery in the Corporation Court of the City of Danville. The jury found him guilty and sentenced him to twelve years in the penitentiary. He pe-

titions this court for relief by way of habeas corpus, setting up the following grounds for relief:

(1) The trial court erred in denying his motion to suppress pre-trial identification testimony admitted in violation of his 6th and 14th amendment rights.

(2) The method of conducting the identification violated his 6th and 14th amendment rights.

(3) The court erred in refusing to grant a motion for mistrial when the jury was allowed to view writing on the back of certain photographs which were admitted as evidence.

(4) The trial court erred in sustaining the prosecution's objection to closing argument of defense counsel in which he referred to the harsh nature of prison life and its detrimental effect upon one's family situation.

Petitioner submitted each of these claims to the Supreme Court of Virginia in a petition for writ of error, which was denied on June 15, 1971.

The record shows that, on the 22nd day of June, 1970, a tall, thin, Caucasian male entered the Riverside office of the Beneficial Finance Company, in Danville, at approximately twenty minutes until two o'clock. The man asked for change for a five dollar bill and when the teller handed him the change, he pointed a gun at her and said, "Now I'd like all of your paper money." The teller handed him the money which he placed in a small brown paper bag and he left.

Two employees of the Winn Dixie grocery store, which is located three doors down from the Beneficial office, testified that they saw a tall, thin, Caucasian male standing around the door of the store just after the robbery. He was also described as holding a small brown paper bag which had something in it. All three of these witnesses, the teller and the two grocery checkers, identified petitioner before the trial and at the trial. Each of them also testified at the trial that they had previously identified petitioner.

Petitioner has made two different claims for relief based upon the identification in this case. The first is that his 6th and 14th amendment rights were violated in that he had no counsel at the pre-trial identification. The second ground states that the method of identification violated his 6th and 14th amendment rights. Petitioner is a layman and he cannot be expected to know the fine distinctions between the amendments to the constitution. His second claim is, in realty, an allegation of a violation of due process in the method of conducting the identification and, giving petitioner the benefit of the doubt, the court will treat it as such.

The facts relating to the identifications are somewhat complicated and must be set forth in detail. The robbery took place in Danville on June 22, 1970. Petitioner lives with his wife in the nearby town of Roxboro, North Carolina. On July 11, 1970, petitioner's sister was driving his car in Roxboro. She was stopped by the police in Roxboro and they told her to tell her brother that he had five days to get his mufflers fixed. She informed her brother of this on July 12, 1970. On July 14, 1970, petitioner was driving his car in Roxboro and he was stopped by the police and given a ticket for improper mufflers. (The officer who gave him the ticket was not the same officer who had given his sister the warning.) Petitioner called the Chief of Police and asked him to look into the matter to see if anything could be done about the ticket, which was issued before the expiration of the five-day warning. The day after the ticket was written, the officer who wrote the ticket came to petitioner's house and told him that the police chief wanted to see him. When petitioner arrived at the police station, officers Jones and Doss of the Danville Police Department were there. They informed him of his constitutional rights and asked him to sign a waiver of rights form. Petitioner refused and told them that he had nothing to say to them.

While petitioner was at the station, the officers took four pictures of him.

Petitioner allowed these pictures to be taken. The Roxboro police then told petitioner to be in court the next day to get his ticket for improper mufflers nolle prossed. The next morning, when petitioner did not appear in court, the police came to his house and told him that he was wanted in court "right now." Petitioner got dressed and they went to the court house. The officer led petitioner into the court room through the side door which is adjacent to the judge's bench. Petitioner sat down in the courtroom; the prosecuting attorney spoke briefly with the officer; and then petitioner was told that he could go. The testimony in the record reveals that it is not uncommon to go out and get persons who do not show up in court when they are supposed to, even if it is just to get a ticket nolle prossed. The record also shows that there were many people in and out of court that morning since traffic court was in session.

The record further shows that when petitioner came into the courtroom there were present the three witnesses from Danville who had been brought to Roxboro to identify petitioner in conjunction with the Danville robbery. These witnesses were present in the courtroom with a Danville police officer who had never before seen petitioner. The witnesses were seated apart from each other and they were not allowed to talk to each other until each had been asked individually if she recognized anyone in the court room that morning.

The witnesses had seen and identified photographs of petitioner earlier but had requested that they be allowed to view him in person if possible so they could be sure. The Danville police had earlier caused a description of petitioner to be run in the papers and they received one response from Roxboro which said that petitioner might possibly be the man. The Danville police inquired of the Roxboro police whether petitioner had a criminal record and if any mug shots were available. Mug shots were forwarded to the Danville police and shown to the teller of the Beneficial Loan Company. She gave a fairly definite identification, but she said that she still would like to see the man in person. She was again shown pictures of petitioner, this time the pictures which were taken in Roxboro by the Danville authorities when they went down there and attempted to question him. The witness again requested that she be allowed to see petitioner in person. Apparently it was at this point that the two police forces worked out the identification in Roxboro.

■ Petitioner first complains that he was denied the right to counsel at the identification. There is no merit to this claim. In the recent case of Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the United States Supreme Court held that the sixth amendment right to counsel does not apply to a pre-trial identification when the defendant has not been indicted or otherwise formally charged. Here, the record shows that petitioner had not been indicted or charged. Therefore, his claim that he was entitled to counsel at the identification is without merit.

■ Petitioner has also raised the question of the constitutionality of the method of the identification. In Palmer v. Peyton, 359 F.2d 199 (4th Cir. 1966), it was held that an identification procedure which violated elementary safeguards rendered the proof of such identification inadmissible under due process principles. This position, which represented a minority view when enunciated, was subsequently adopted by the Supreme Court in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). In *Stovall*, the Supreme Court stated:

"We turn now to the question whether petitioner, although not entitled to the application of *Wade* and *Gilbert* to his case, is entitled to relief on his claim that in any event the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. This is a recognized ground of attack

upon a conviction independent of any right to counsel claim." 388 U.S. 293, 302, 87 S.Ct. 1967, 1972.

And, in *Kirby*, supra, n. 8, the court stated: "In view of our limited grant of certiorari, we do not consider whether there might have been a deprivation of due process in the particularized circumstances of this case. That question remains open for inquiry in a federal habeas corpus proceeding." Thus, it appears beyond question that the issue is a proper one to be raised by way of habeas corpus. See also Foster v. California, 394 U.S. 440, 442, 89 S.Ct. 1127, 22 L. Ed.2d 402 (1969); Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

■■ The test is whether, considering the totality of the circumstances, the identification procedures were so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process. *Stovall*, supra; *Foster*, supra; *Simmons*, supra; United States ex rel Phipps v. Follette, 428 F.2d 912 (2nd Cir. 1970). The court has reviewed the totality of the circumstances surrounding the identification and concludes that there was no constitutional violation in the manner in which it was conducted. See also United States v. Sherman, 421 F.2d 198 (4th Cir. 1970).

At the trial of this case, defense counsel took the position that the entire matter of the charge of illegal mufflers was used as a ruse by the police to get petitioner before the three witnesses. The facts do not bear this out, and even if they do, they only go to show an abundance of precaution on the part of the authorities prior to arresting the petitioner. The chief of the Roxboro police candidly stated that the purpose of having petitioner in court was not only to nolle prosse the ticket but also to allow the witnesses to take a look at him. However, there is no indication in the record that the muffler charge had been trumped up for that purpose. In fact, it would have been nearly impossible to do so without the cooperation of petitioner himself. It should be recalled that it was at the behest of the petitioner that the police chief looked into the question of the muffler charge, and only then did the matter of coming to court to have the ticket nolle prossed enter into the picture. The court finds no fundamental unfairness to petitioner in the police seizing this opportunity to have the witnesses view him so long as the process was not "unnecessarily" (*Stovall*) or "impermissibly" (*Simmons*) suggestive or "conducive to irreparable mistaken identification." (*Stovall*). Due to the fact that defense counsel pursued this matter at length at the trial; in fact, there was an independent hearing on the matter; the record is quite complete on the details of the identification. The record indicates that there was no suggestion whatsoever and that this identification was no more susceptible to mistaken identification than the ordinary lineup. When the witnesses were taken to Roxboro, the matter of the identification was not discussed during the trip. The officer who sat with them in the courtroom had never before seen the petitioner. The witnesses were not allowed to sit together, nor were they allowed to talk to each other before they were asked individually if they recognized anyone in the courtroom that morning. There were many people in and out of court that day because traffic court was in session. The witnesses were not told to look toward any particular door, nor were they directed to be especially alert at any particular time. Nor does it appear that petitioner was brought into the courtroom in a manner which would suggest to the witnesses that he was the man they were looking for. While it is true that petitioner used the side entrance to the courtroom, it appears that such was not uncommon, and there is no suggestion that the witnesses were aware of it beforehand. The record also shows that the witnesses were seated near the front where they would have a close, direct view of anyone who had business before the court.

Based upon the standards enunciated by the Supreme Court and upon a review of the totality of circumstances

surrounding the pre-trial identification of petitioner, the court is of opinion that no constitutional violation exists.

■ As further grounds for relief, petitioner claims that he was entitled to a mistrial when certain members of the jury looked at the reverse side of several photographs which had been admitted into evidence. It appears that the photographs contained writing on the reverse aside describing what the photographs were a representation of. They were pictures of the petitioner which had been identified as such just before they were admitted. Defense counsel did not point this out to the court until after the jury had seen the reverse side of the pictures. The trial court did all that it could do under the circumstances when it instructed the jury to disregard any writing on the backs of any of the pictures. The actions of the trial judge may or may not have constituted error under state law. This court is not concerned with that, unless, in the context of the trial, the actions of the trial court amounted to fundamental unfairness. Grundler v. State of North Carolina, 283 F.2d 798 (4th Cir. 1960). The matter certainly does not rise to constitutional dimensions. As stated in *Grundler*, "It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented." There is no fundamental unfairness present in the actions of the trial court and no points of constitutional law are involved. Petitioner's third ground for relief is, therefore, rejected.

■ Finally, petitioner contends that the trial court erred in sustaining the prosecution's objection to the following portion of defense counsel's closing argument:

"MR. THOMSON: Can you all say this is a solid enough identification to send this young man to prison? That's the question. Have you ever been to prison? The prison in Richmond is on Spring Street. It looks very much like an institution that I

have a fond spot in my heart and a soft spot in my head for, called V.M.I. The architecture is very similar, the only difference being that the bars are horizontal at V.M.I. and they are vertical in Richmond. They all wear the same kind of uniform."

And, later on in the argument, the court sustained prosecution's objection when defense counsel attempted to discuss how a prison sentence would upset defendant's family life. The trial court held that both lines of argument were improper and instructed the jury to disregard them. Again, petitioner's claim is solely one of state law involving no fundamental unfairness or specific constitutional violations. Therefore, his claim is rejected. *Grundler*, supra.

■ As the record contains a full development of all the factual matters necessary for the determination of petitioner's contentions, no further hearing is required. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

An order is this day entered consistent with this opinion.