UNITED STATES of America, Appellee,

v.

Willie SHAW, Jr., Appellant.

No. 74–2012.

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1975.

Decided June 19, 1975.

Stephen G. Morrison [Third-year law student] and (William T. Toal, Greenville, S. C. [Court-appointed counsel] on brief), for appellant.

Thomas P. Simpson, Asst. U. S. Atty. (Mark W. Buyck, Jr., U. S. Atty., on brief), for appellee.

Before ANDERSON, Senior Circuit Judge,* and CRAVEN and FIELD, Circuit Judges.

ROBERT P. ANDERSON, Senior Circuit Judge:

Willie Shaw, Jr., appeals from the judgment of conviction entered on the jury's verdict of guilty in the United States District Court for the District of South Carolina on a charge of armed robbery of a bank and from the denial of his motion for acquittal. At the conclusion of the Government's case, the court dismissed the charge against Gary Windell Wilson, his co-defendant.

Although neither defendant testified at trial, they had both made oral statements at the time of or shortly following their arrests to agents of the F.B.I. The agents testified to these statements under the court's limiting instruction that

* Second Circuit Judge, sitting by designation.

the jury could consider each statement only as to the individual who had made it. The issues on appeal are whether the introduction at trial of the statement made by Gary Wilson violated Shaw's Sixth Amendment right of confrontation in the light of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and whether there was sufficient evidence to support the jury's verdict.

The Supreme Court held in *Bruton* that the introduction at trial of a confession made by a co-defendant who did not take the stand, which directly incriminated the defendant, violated the latter's Sixth Amendment right, despite the trial court's cautionary instruction that the statement was admissible only as to the party making it.

■ Wilson's out-of-court statement that he had met Shaw at approximately 3:30 p. m. on January 10, 1974 (five hours after the robbery had occurred) and that they then went to the home of Wilson's girlfriend, Jacqueline Reaves, concerned non-inculpatory events. It did not contradict appellant's exculpatory statement that he was asleep at his grandmother's house at the time of the robbery and that on the following day he had gone to South Carolina to visit his mother; but it was inconsistent with Shaw's statement that he had not seen Wilson on the day of the robbery and that he had not been at Jackie Reaves' house. We need not decide whether any adverse effect which the admission of Wilson's extrajudicial statement may have had upon appellant's credibility was "incriminating" within the meaning of *Bruton,* because we hold that, even if there were a Sixth Amendment violation, it was harmless beyond a reasonable doubt and, therefore, does not call

for a reversal. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Wilson's statement was merely cumulative on the issue of appellant's credibility, for which there was overwhelming adverse evidence given by witnesses, who were subject to cross-examination.[1]

■ The test applied on review of the denial of a motion for judgment of acquittal is that "a guilty verdict 'must be sustained if there is substantial evidence, taking the view most favorable to the government, to support the findings of guilt.'" United States v. Taylor, 482 F.2d 1376, 1376–7 (4 Cir. 1973), quoting from United States v. Sherman, 421 F.2d 198, 199 (4 Cir. 1970). It is also well settled that circumstantial "evidence may support a verdict of guilty, even though it does not exclude every reasonable hypothesis consistent with innocence." United States v. Chappell, 353 F.2d 83, 84 (4 Cir. 1965).

Evidence was introduced at trial that the robbery in question had been carried out by two men wearing ski-masks who escaped in an automobile which was abandoned near a swampy area and that a wet twenty dollar bill and a blue denim jacket were found in a field on the other side of the swamp. A ski-mask was also later found in the vicinity. Although appellant was not positively identified as one of the robbers, it was undisputed that he fit the general description of one of them.

The getaway car belonged to Shaw's brother-in-law, who had reported it as stolen on the day of the robbery, and who testified that he had previously given Shaw permission to use the vehicle on several occasions but not since it had last

---

1. Jacqueline Reaves testified that Wilson and Shaw had been at her home on the afternoon of the robbery; and appellant's step-father testified that he had been at home with his wife at the time appellant claimed to have visited her, but he had not seen Shaw. There was also evidence that Shaw had lived and worked in Virginia although at the time of his arrest

he denied that he had ever been in Virginia or Maryland.

An F.B.I. agent testified that appellant had asked him if Buck had been arrested and told him that Buck had nothing to do with it, thereby implying that he knew about the offense and who had participated.

1184

been washed. The brother-in-law further stated that he had the only ignition key in his possession at the time the car was taken, although a key was removed from the car by the officers at the time they searched it, as well as a green surgical glove, similar to one subsequently found among appellant's belongings. They also found Shaw's fingerprint on a window of the car.

There was testimony that appellant's grandmother had received in the mail a $200 money order, bearing Shaw's handwriting and purchased in Baltimore, Maryland, on the day after the robbery by a man fitting appellant's description who had used wet, paper currency.

The jury could have reasonably inferred from this evidence that Shaw had had the opportunity to have a duplicate ignition key made when he had previously used his brother-in-law's car, and that the money used to purchase the money order had become soaked when he fled through the swamp where the car was abandoned.

Affirmed.