UNITED STATES of America, Appellee,

v.

Rudolph BAKER, Appellant.

UNITED STATES of America, Appellee,

v.

Roger PENNELL, Appellant.

Nos. 79–5083, 79–5084.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 12, 1979.

Decided Dec. 11, 1979.

Irvin B. Tucker, Jr., Raleigh, N.C., for appellant Baker.

William E. Anderson, Raleigh, N.C., for appellant Pennell.

Jack B. Crawley, Jr., Asst. U. S. Atty., Raleigh, N.C. (George M. Anderson, U. S. Atty., Raleigh, N.C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and MURNAGHAN, Circuit Judges.

WINTER, Circuit Judge:

Defendants Rudolph C. Baker and Roger Pennell were each convicted on each count of a five-count indictment charging them with causing a woman to travel in interstate commerce with intent to further the business of prostitution, unlawful under state law, in violation of 18 U.S.C. §§ 1952(a)(3) and 2.[1] They appeal, contending that the evidence was legally insufficient to support the jury's verdict on each count and that the district court committed reversible error in charging the jury and in admitting evidence to which objection had been made.

We see no merit in the several contentions and we affirm.

## I.

The first count of the indictment alleged that the defendants caused the proscribed transportation of Verna James Haymore from South Carolina to Wilson, North Carolina, occurring on or about January 25, 1978. Each of the remaining four counts alleged that they caused the proscribed transportation of Kay Hucksby McLemore from Macon, Georgia, to Wilson, North Carolina, occurring on or about February 12, 1978, January 1978, October 1977, and June 1977, respectively.

■ Viewed in the light most favorable to the government,[2] the evidence showed that, in February 1977, Baker purchased the Bel Air Truck Stop in Wilson, North Carolina, and that he arranged to have it operated as a house of prostitution. Baker employed a series of "madams" and managers. One of these employees was Pennell, who was hired as an assistant manager. One of the madams quit her employment because she objected to Baker's intent to employ prostitutes from outside of North Carolina.

Kay McLemore obtained employment as a prostitute in June 1977 through a telephone conversation with the then-madam, and she traveled from her home in Macon, Georgia, to Wilson to begin her employment. She subsequently returned to her home following her initial employment in June of 1977 and thereafter, traveling from Macon to Wilson for the same illegal purpose again in October 1977, in January 1978, and on or about February 1, 1978.

Verna James Haymore traveled from South Carolina to Wilson to work at the Bel Air Truck Stop as a prostitute on January 25, 1978. She went to Wilson pursuant to the arrangements made by a gentleman friend in South Carolina who telephoned "Roger" and arranged for her employment. When she arrived in Wilson at the Bel Air Truck Stop, she was met by defendant Roger Pennell, who explained to her the rules of the establishment, her hours of work, and how she would be taken care of in the event that she "got busted by the law."

## II.

■ We have no doubt that the evidence was sufficient to support the guilty verdicts

---

1. Also indicted in each count was Edward Carroll Crumpler, but his trial was severed from that of Baker and Pennell.

2. When the sufficiency of the evidence to support a conviction is attacked "[t]he verdict . . . must be sustained if there is substantial evidence, taking the view most favorable to the government, to support the findings of guilt. . . ." *United States v. Sherman*, 421 F.2d 198, 199 (4 Cir.), *cert. denied*, 398 U.S. 914, 90 S.Ct. 1717, 26 L.Ed.2d 78 (1970).

and to justify the district court's denial of motions for acquittal made by both defendants at the close of the government's case. We see no need to detail the evidence.

■ It is enough to state that it was sufficient to permit the jury to conclude that the trip of Verna Haymore from South Carolina to Wilson and the four journeys of Kay. McLemore from Macon, Georgia, to Wilson were prearranged by the defendants. Admittedly, the evidence on this point was weaker with respect to Verna Haymore than it was with respect to Kay McLemore, but as we have set it forth above, it was legally sufficient to establish that the interstate travel was the result of a plan made with Pennell for Haymore to work at the truck stop; Ms. Haymore's trip was not merely a unilaterally motivated journey undertaken for the purpose of seeking employment as a prostitute, followed by an employment agreement.[3]

■ The evidence is clear that Pennell aided and abetted Baker in the illegal operation and was an agent in assisting in the operation. Baker thus caused the interstate travel of Ms. McLemore and Ms. Haymore with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of prostitution at the Bel Air Truck Stop contrary to N.C.Gen.Stat. § 14–204 (1969), all in violation of 18 U.S.C. §§ 1952(a)(3) and 2; and Pennell aided and abetted him in the commission of that crime.

### III.

We find no reversible error in the district court's charge to the jury.

■ The district court gave certain instructions about § 1952(a)(3) which were not applicable to the charges against defendants. In pertinent part, that statute states "[w]hoever travels in interstate or foreign commerce or uses any facility in interstate of foreign commerce . . ." with intent to promote or facilitate the promotion of a business enterprise involving prostitution in violation of the laws of the state in which they are committed shall be fined or imprisoned. In reading the statute to the jury, the district court read only the clause proscribing the use of facilities in interstate or foreign commerce and omitted the reading of the clause proscribing interstate travel. Although it was repeatedly stated that defendants were charged with causing the prostitutes to travel interstate, the district court occasionally made reference to the fact that the use of facilities in interstate commerce for these illegal pur-

---

3. In this respect, the instant case is clearly distinguishable from *Rewis v. United States*, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971). In *Rewis*, the United States Supreme Court unanimously held that the operators of an illegal gambling operation could not be prosecuted under the Travel Act on the theory that they could reasonably foresee that customers would cross state lines for the purpose of patronizing their illegal operation. Even leaving aside the fact that *Rewis* dealt with travel by patrons of an illegal establishment rather than travel by actual participants in the operation, it is apparent that Baker and Pennell did more than operate an illegal establishment which happened to lure persons across state lines. Nothing in *Rewis* is contrary to our decision today.

We also note that in rejecting the government's contention that the operators of an illegal enterprise could be convicted under § 1952 if it was reasonably foreseeable that their *customers* would cross state lines, the *Rewis* Court explicitly recognized that "there are cases in which federal courts have correctly applied § 1952 to those individuals whose *agents or employees* cross state lines in furtherance of illegal activity." *Id.* at 813, 91 S.Ct. at 1060 (emphasis added). In one of the cases cited, *United States v. Zizzo*, 338 F.2d 577, 580 (7 Cir. 1964), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1530, 14 L.Ed.2d 435 (1965), for example, the proprietor of a gambling operation contended that he could not be convicted under the Travel Act because he did not travel interstate and had nothing to do with, and did not even know of, the interstate travel of his employees. In affirming Zizzo's conviction, the court stated that it was "clear that the gambling business . . . caused the interstate travel by the three employees," and that a jury could properly infer that the proprietor knew that some of his employees lived out-of-state. *Id.* at 580. *See also Bass v. United States*, 324 F.2d 168 (8 Cir. 1963). We conclude that the instant case is analogous to the employee-agent cases approved in *Rewis* rather than to *Rewis* itself.

poses was also prohibited. When, in the course of its deliberations, the jury requested further instructions, the district court again read the statute with the clause proscribing travel omitted, and it again made references to "facilities in interstate commerce," albeit reiterating that the causing of specific incidents of interstate travel charged in the indictment was essential to conviction.

We do not doubt that the district court's references to the use of facilities in interstate commerce was superfluous and, if read in isolation, would be confusing. However, we are not persuaded that the jury was confused or misled. When dealing with the specific elements of the offense charged and the specific counts of the indictment, the district court referred only to travel. It was only in the more general discussion of the statute that the district court referred to use of interstate facilities as well as interstate travel. Thus, when read as a whole, we do not think that the instructions contained reversible error.[4]

■ Pennell also contends that the district court's instructions on the criminal responsibility of an aider and abettor under 18 U.S.C. § 2(a) were erroneous. In essence, his argument is that while one may be punished for aiding and abetting in the substantive offenses proscribed in § 1952, one may not be punished for aiding and abetting another who "causes" a third person to travel in interstate commerce in violation of the statute. He cites no authority to support his position and we reject the contention.

Under 18 U.S.C. § 2(b), one who causes an offense to be committed is punishable as a principal. The history of § 2(b) shows that it was enacted to replace the awkward use of phrases such as "causes or procures" in existing statutory definitions of offenses and to eliminate the need for including such language in future criminal statutes. *See* 18 U.S.C. § 2, Revisor's Note. We therefore see no reason to conclude that, under § 2(a),

one who aids another who is guilty of causing an offense under § 2(b), may not be guilty as an aider and abettor.

Defendants' other objections to the charge are without merit and do not warrant discussion.

### IV.

■ Finally, we do not think that. the district court committed reversible error in its evidentiary rulings. Telephone records showing telephone calls from the truck stop, out-of-state telephone books showing the names of the places called, and testimony showing that these places were out-of-state houses of prostitution were properly admitted. While their relevance is only marginal, this evidence did tend to show knowledge on the part of defendants of the interstate travel of the prostitutes. Defendants' objection that there was no evidence that either of them placed these calls goes to the weight of the evidence rather than its admissibility, in the light of other evidence that Baker was the owner of the truck stop and Pennell was a full-time assistant manager.

*AFFIRMED.*

---

4. *United States v. Park*, 421 U.S. 658, 674–75, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975); *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *Reeves v. Reed*, 596 F.2d 628, 629 (4 Cir. 1979).