**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 10-4503**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LONNIE ANTHONY SMITH, a/k/a Timmy,

Defendant - Appellant.

---

**No. 10-4504**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LONNIE ANTHONY SMITH, a/k/a Timmy,

Defendant - Appellant.

---

Appeals from the United States District Court for the Northern District of West Virginia, at Wheeling.  Frederick P. Stamp, Jr., Senior District Judge.  (5:09-cr-00027-FPS-JES-1; 5:09-cr-00007-FPS-JES-1)

---

Argued:  October 27, 2011        Decided:  November 30, 2011

---

Before TRAXLER, Chief Judge, and GREGORY and KEENAN, Circuit Judges.

---

Affirmed by unpublished opinion. Judge Gregory wrote the opinion, in which Chief Judge Traxler and Judge Keenan joined.

---

**ARGUED:** Jeffrey Michael Brandt, ROBINSON & BRANDT, PSC, Covington, Kentucky, for Appellant. Randolph John Bernard, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee. **ON BRIEF:** Stephen D. Herndon, Wheeling, West Virginia, for Appellant. William J. Ihlenfeld, II, United States Attorney, John C. Parr, Assistant United States Attorney, Wheeling, West Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

This consolidated case comes on appeal from the conviction and sentencing of appellant Lonnie Anthony Smith for: (1) conspiracy to possess with intent to distribute heroin, (2) causing a person to travel in interstate commerce to promote the distribution of heroin, (3) the use of a telephone to facilitate the distribution of heroin, and (4) conspiracy to escape. In his appeal, Smith challenges the sufficiency of the evidence for the conspiracy and interstate travel convictions. Smith also contends that the failure of the Government to recommend a sentence at the bottom end of the Guidelines range as promised in Smith's plea agreement constitutes plain error. For the reasons that follow, we find that Smith's arguments have no merit.

I.

On February 3, 2009, a grand jury issued an indictment in the Northern District of West Virginia charging Smith with the violation of a number of federal statutes, and on April 7, 2009, a superseding indictment was returned charging the instant offenses. While awaiting trial, Smith plotted to escape from the Northern Regional Jail in Moundsville, West Virginia, and he pled guilty to a charge of conspiracy to escape.

3

At Smith's bench trial, a number of co-conspirators testified according to plea agreements. The testimony showed that Smith was a participant in and distributor for a heroin ring. Smith would frequently meet his customers at hotel rooms rented for him by his distributees in the Pittsburgh, Pennsylvania, area, where he would sell heroin multiple times each day, knowing that the heroin would be resold in the Northern District of West Virginia, among other places.

On January 29, 2010, the district court found Smith guilty of all three counts. Smith was sentenced to 262 months for his conspiracy count, 60 months for his violation of the Travel Act, 18 U.S.C. § 1952 (2006), 48 months for the use of a telephone to distribute heroin, and 60 months for his escape conviction. The district court ordered Smith to serve all sentences concurrently. Smith then filed his notice of appeal.

Smith appeals the sufficiency of the evidence of two counts: conspiracy to possess with intent to distribute and to distribute one kilogram of heroin, and aiding and abetting the interstate travel of a person with the intent to carry on heroin distribution. Smith also appeals the sentence on his escape conviction. Because of the fact-intensive nature of this appeal, we address the salient factual details of the heroin conspiracy in the analysis on the merits of Smith's appeal.

4

II.

Smith challenges the sufficiency of the evidence for his conspiracy and Travel Act convictions. This Court must uphold a verdict where there is "substantial evidence" such that "a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc), cert. denied, 519 U.S. 1151 (1997). In doing so, this Court must look at the evidence as a "complete picture, viewed in context and in the light most favorable to the Government." Id. We treat each challenge in turn, finding that neither has merit.

A.

To prove conspiracy to possess with intent to distribute, the government must show that (1) an agreement to possess heroin with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of the conspiracy. Burgos, 94 F.3d at 857.

> Whether there is a single conspiracy or multiple conspiracies depends upon the overlap of key actors, methods, and goals. However, one may be a member of a conspiracy without knowing its full scope, or all its members, and without taking part in the full range of its activities or over the whole period of its existence. Also, it is not necessary that the conspiracy have a discrete, identifiable organizational structure. Often, the single

5

> conspiracy is comprised of a loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market.

United States v. Nunez, 432 F.3d 573, 578 (4th Cir. 2005) (internal citations and quotation marks omitted). Once a conspiracy has been established, the government need only show a slight connection between the defendant and the conspiracy. Burgos, 94 F.3d at 861. Furthermore, competition in the drug market among some conspirators does not preclude a finding of a single conspiracy. United States v. Jeffers, 570 F.3d 557, 568 (4th Cir. 2009).

As is frequently the case in drug distribution trials, most of the salient evidence came from co-conspirator testimony. The district court gave the testimony of those co-conspirators testifying under plea agreements "greater scrutiny" and nonetheless concluded that the co-conspirators' testimony was credible. United States v. Smith, No. 5:09CR7-01, slip op. at 33 (N.D. W. Va. January 28, 2010).

Precedent and the facts are squarely on the side of the Government. The district court made extensive findings of fact, detailing the operation of the conspiracy. All members of the conspiracy had a financial interest in the continued distribution of heroin in the Northern District of West Virginia; they shared the goal of "sustaining the overall

6

enterprise of catering to the ultimate demands of a particular drug consumption market." Nunez, 432 F.3d at 578. That drug market was the area around Weirton, West Virginia. See Smith, at 28 ("It was in the mutual interest of defendant Smith and various members of the conspiracy to promote and continue heroin drug trafficking in the Northern District of West Virginia and elsewhere.").

All of the members of the conspiracy knew of the significant quantity of heroin that Smith kept on hand, which implies a distribution scheme. Furthermore, the repetitive drug transactions at hotel rooms rented for Smith by the co-conspirators establish the regular and continuing nature of a drug-distribution conspiracy. Cf. Jeffers, 570 F.3d at 568 ("Additionally, the evidence showed that the multiple drug dealers at Shriver's Motel engaged in 'a consistent series of smaller transactions,' which comprised a single conspiracy.") (quoting United States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993)).

The testimony of Kenneth Salters, Smith's childhood friend and co-conspirator, establishes the conspiracy and corroborates the incriminating testimony of the other witnesses and co-conspirators. Salters saw Smith sell heroin to customers on a daily basis, including some of the co-conspirators. A reasonable inference from Salters's testimony is that Smith knew

7

that at least some of his co-conspirators were redistributing heroin in West Virginia. And Smith even helped Salters start selling heroin by giving Salters a customer list that included buyers from the Northern District of West Virginia, and the two began a referral system for heroin demand that they individually could not meet. Likewise, Salters corroborated testimony that Smith paid heroin to co-conspirators who would rent motel rooms and cars for Smith to further his drug activity and to hide their identities if the police investigated. Salters also testified that the phone numbers discussed by other witnesses were ones used to deal heroin.

United States v. Banks is instructive. Banks involved, like this case, a loose organization of drug distributors and suppliers charged in a single conspiracy in which not all participants knew the identities of the others participating, but nevertheless were engaged with a common enterprise whose aim was to supply drugs to a discrete region. Banks, 10 F.3d at 1053-54. The Court affirmed the convictions, rejecting the defendant's view that the government had proved numerous small conspiracies but not a large overarching conspiracy. Id. at 1050-56. The evidence supporting such a finding "essentially consist[ed] of testimony about a great number of discrete buy-sell transactions between various ones of the alleged co-conspirators, and nothing either directly or inferentially

8

probative of any discernible hierarchical organization in which they were linked." Id. at 1053.

The prosecution put on evidence sufficient for a reasonable trier of fact to conclude that Smith agreed with his co-conspirators to distribute heroin in the Weirton area of West Virginia. In addition to Salters's testimony, co-conspirator Grimes testified that Smith knew she was redistributing heroin in West Virginia because she had told Smith about the sales and that she told him that she was charging her customers twice what she paid Smith. Grimes also testified that she saw Smith possess large amounts of cash and heroin and sell heroin to other customers. She told the court that Smith said that he was worried because some of his customers were being indicted in West Virginia.

Satathite, another West Virginia dealer, testified that Smith knew Satathite was redistributing heroin and that one time Smith remarked that Satathite must be "moving [the heroin] pretty quick." Additionally, Satathite testified that Smith met him in West Virginia in the parking lot of the Weirton Medical Center in June 2008 and sold him three bricks of heroin, further establishing Smith's ties to the redistribution of heroin in West Virginia.

Additional circumstantial evidence that Smith knew that his customers were coming from West Virginia includes the area code

9

of the phone numbers used to call Smith to arrange drug transactions and the license plates of vehicles used by co-conspirators to pick up drugs.

Furthermore, Smith once offered to front heroin to McLaughlin, a co-conspirator. Fronting drugs shows knowledge of resale. See Nunez, 432 F.3d at 578 (citing the fact that drugs were fronted as evidence of a conspiracy to distribute).

Many co-conspirators testified to the same few meeting locations for deals with Smith, and many rented hotel rooms and cars in exchange for heroin. Pen registers for Smith's cell phones showed frequent phone calls to a number of the co-conspirators. Many co-conspirators also testified as to the presence of trademark bag markings indicating different brands of heroin distributed by Smith. All of the foregoing demonstrate the similar methods and means used by the co-conspirators and Smith to conduct the conspiracy.

The evidence here is at least as strong as that presented in Banks. We therefore affirm the conspiracy conviction.

B.

A conviction under the Travel Act, 18 U.S.C. § 1952 (2006), must have three elements: (1) interstate travel, (2) an intent to promote an unlawful activity (a business enterprise), and (3) performance or attempted performance of an unlawful act. United States v. Gallo, 782 F.2d 1191, 1194 (4th Cir. 1986). Section

10

1952(b) defines "unlawful activity" as "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substance Act) . . . in violation of the laws . . . of the United States."  18 U.S.C. § 1952(b) (2006).  Smith's liability for this violation is 18 U.S.C. § 2's prohibition against "causing" or aiding and abetting a violation of federal law.

Elements (2) and (3) above are clearly established by the facts discussed above in connection with the sufficiency of the conspiracy charge.  The question is whether Smith did aid, abet, and cause Bryan Cottrill, a confidential informant, to travel interstate.

The illegal inducement of interstate travel occurred on September 26, 2008.  On that day, Cottrill, cooperating with police, called Smith from West Virginia in order to arrange a buy in Pennsylvania.  The call was recorded.  Since 2003, Cottrill had bought heroin from Smith three or four times per week.  The usual pattern, followed in this instance, is that Smith would tell Cottrill to "come up" to the "Robinson, Green Tree" area of Pittsburgh, Pennsylvania; Cottrill would call Smith once he arrived in the area, and Smith would tell him the meeting location -- in this case, the Robinson Mall.  On this particular call, Cottrill told Smith that he was "about to leave the shop" and "jump on the highway," but that he wanted to make

sure that it was "all good." Cottrill went on to describe the details of the purchase at the Robinson Mall.

Admittedly, there was no direct evidence produced during the Cottrill direct examination that Smith knew where Cottrill lived, that a phone with a West Virginia area code was used, or that a car with West Virginia plates was used. Yet there is sufficient evidence for a reasonable trier of fact to find beyond a reasonable doubt that Smith, on this particular occasion, violated the Travel Act. The district court reasonably concluded that Smith violated the Travel Act based on (1) the history of the relationship between Smith and Cottrill, (2) the imputed knowledge of Smith that many of his purchasers came from West Virginia, (3) the timing of the phone calls suggesting the distance traveled by Cottrill, and (4) the use of the phrases "come up" and "jump on the highway" suggesting that Smith knew Cottrill was coming from West Virginia, and (5) the fact that that Smith encouraged Cottrill to do so in order to sell Cottrill heroin.

Court precedent bolsters this conclusion. Smith argues that Rewis v. United States, 401 U.S. 808 (1971), controls. In that case, a mere customer did not facilitate the business he patronized. The Supreme Court agreed that "intent to . . . facilitate" requires more than a mere "desire to patronize the illegal activity." Id. at 811. The evidence here, however,

12

established that Cottrill frequently distributed heroin in West Virginia purchased from Smith.  Cottrill had more than a mere patronage relationship with Smith.

In any case, the Rewis Court cites approvingly to a number of circuit court cases "in which federal courts have correctly applied § 1952 to those individuals whose agents or employees cross state lines in furtherance of illegal activity."  Rewis, 401 U.S. at 813.  As this Circuit noted in United States v. Baker, 611 F.2d 961, 963 (4th Cir. 1979), one such case cited, United States v. Zizzo, 338 F.2d 577, 580 (7th Cir. 1964), held the proprietor of a gambling operation liable despite his contention that he did not travel interstate and did not even know of the interstate travel of his employees.  The Zizzo court said it was "clear that the gambling business . . . caused the interstate travel by the three employees," and that a jury could properly infer that the proprietor knew that some of his employees lived out-of-state.  Zizzo, 338 F.2d at 580.  This Circuit in Baker found its facts -- an interstate trip made by a prostitute at the direction of her boss -- were "analogous to the employee-agent cases approved in Rewis [sic]," and upheld the Travel Act conviction.  Baker, 611 F.2d at 963.

We affirm the Travel Act conviction because of the reasonable inference from the record that Smith knew Cottrill

was coming from West Virginia and because of the overwhelming evidence of the purpose of the call.

III.

Appellant next argues that he should be allowed to withdraw his guilty plea because of the Government's failure to move for a sentence at the bottom of the Guidelines range for his escape conviction.

The plain error standard governs here because Smith did not raise this claim below. To prove plain error, "the appealing party must show that an error (1) was made, (2) is plain . . . , and (3) affects substantial rights." United States v. Lynn, 592 F.3d 572, 577 (4th Cir. 2010). The third prong means the error "affected the outcome of the district court proceedings," Puckett v. United States, 129 S. Ct. 1423, 1429 (2009). "Fourth and finally, if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error -- discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. (citations ommitted).

Smith argues on appeal that the government breached its contract -- Smith's plea agreement for his escape charge -- when the government failed to recommend a sentence at the low end of the Guidelines range for that offense. Surely, Smith has

14

established that the error was made and that it was plain. However, Smith cannot demonstrate it "affected his substantial rights" because the outcome was not affected by the error.

Smith was sentenced according to the grouping requirements of U.S.S.G. § 3D1.2(c), which combines conduct for multiple charges into a single tally for sentencing purposes. The court sentenced Smith to 262 months for the conspiracy charge, which was at the lowest end of the Guidelines range for the grouped offense, and he was ordered to serve time for all of his counts concurrently. So while Smith was sentenced to 60 months for his escape charge, a lower sentence would not have helped him because he would still be serving the concurrent 262-month sentence for his conspiracy conviction. It therefore cannot be said that the error violated Smith's substantial rights.

Because Smith has not shown that the error affected his substantial rights, we affirm the sentence of the district court.

AFFIRMED