PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MARC ANTHONY JEFFERS,

*Defendant-Appellant.*

No. 06-5289

Appeal from the United States District Court
for the Western District of Virginia, at Harrisonburg.
Glen E. Conrad, District Judge.
(5:04-cr-30042-gec)

Argued: March 27, 2009

Decided: June 17, 2009

Before NIEMEYER, KING, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Niemeyer and Judge Duncan joined. Judge Niemeyer wrote a separate concurring opinion.

## COUNSEL

**ARGUED:** Katherine A. Warren, WHEAT & WU, Washington, D.C., for Appellant. Jean Barrett Hudson, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee. **ON BRIEF:** Judith L. Wheat, Shanlon

Wu, WHEAT & WU, Washington, D.C., for Appellant. Julia C. Dudley, Acting United States Attorney, Roanoke, Virginia, for Appellee.

---

**OPINION**

KING, Circuit Judge:

Defendant Marc Anthony Jeffers was convicted in the Western District of Virginia of conspiring to distribute 50 grams or more of a mixture or substance containing cocaine base, in contravention of 21 U.S.C. § 846 (the "conspiracy offense"), and of using or carrying a firearm during and in relation to a drug trafficking crime, and of possessing a firearm in furtherance of that crime, in violation of 18 U.S.C. § 924(c)(1)(A) (the "firearm offense"). Jeffers appeals his convictions and sentence, and we have grouped his multiple appellate contentions (several of which were not preserved) as follows: (1) the district court deprived him of due process by conducting proceedings off the record; (2) the evidence fails to support his conviction on the firearm offense; (3) the jury instructions were erroneous in various respects; (4) the court committed two sentencing errors; and (5) the prosecution failed to comply with its discovery obligations. As explained below, we reject each of his contentions and affirm.

I.

A.

Jeffers's convictions arise from his participation in an illegal drug enterprise, which operated out of an old motel in Luray, Virginia, that had been converted into apartments ("Shriver's Motel"). After receiving information that cocaine base ("crack cocaine" or "crack") and cocaine were being sold at Shriver's Motel, the Luray Police and the Page County

Sheriff investigated, conducting surveillance activities and making more than thirty controlled drug buys in the month of January 2002. The investigation revealed that large quantities of crack were being sold and distributed there. On February 2, 2002, the authorities executed search warrants at Shriver's Motel and arrested four suspects in the illicit enterprise: Brian Carter, James Jackson, Shannon Johnson, and William "Bobby" Pettis. Jeffers was indicted over two years later, on June 16, 2004, and he was arrested on November 29, 2004.

## B.

On September 22, 2006, following a three-day jury trial, Jeffers was convicted on two of the five counts levied against him in a sixteen-count indictment (the "Indictment").[1] Only the two counts of conviction — Counts One and Fourteen — were submitted for jury determination. Count One alleged the conspiracy offense, that in or around August 1999 and thereafter, Jeffers had conspired with others to distribute 50 grams or more of a substance containing cocaine base. Count Fourteen charged Jeffers with the firearm offense, that he had used or carried a firearm during and in relation to the drug trafficking crime charged in Count One, and had possessed a firearm in furtherance of that crime.

In its case-in-chief and on rebuttal, the prosecution presented approximately sixteen witnesses. These witnesses included two local officers involved in the surveillance of Shriver's Motel (Dwight Farmer and John Kibler); three federal officers involved in Jeffers's arrest (Jeremy Hanaker, Brian Sheppard, and William Metcalf); two confidential informants (Jason Giles and Nathan Strickler); and seven cooperating coconspirators (Carter, Jackson, Johnson, Joby Chu, John Lewis, Lenotto Mewborn, and Adrian Wigington). In his

---

[1]The Indictment charged Jeffers with five counts: Counts One, Two, Three, Four, and Fourteen. On September 21, 2006, the district court granted judgment of acquittal to Jeffers on Counts Two, Three, and Four.

defense, Jeffers called eight witnesses, who generally testified about his participation in work and social events in Washington, D.C. — about ninety miles from Luray — between August 1999 and February 2002, the timeframe of the conspiracy. Following the jury's guilty verdict, on September 29, 2006, Jeffers filed a motion for a new trial, as well as a motion for judgment of acquittal on the firearm offense.

Jeffers's sentencing hearing was conducted in the district court on December 4, 2006, and William Good, the probation officer who had prepared Jeffers's presentence investigation report (the "PSR"), testified. Relying on the trial evidence, Good provided the court with testimony that Jeffers was responsible for more than 1.5 kilograms of crack, and emphasized that his estimate was a "very conservative amount." J.A. 891.[2] In imposing Jeffers's sentence, the court stated that it was predicating its drug quantity finding on Good's testimony and, "more importantly, based on the Court's recollection from the evidence that was adduced at trial." *Id.* at 909. The court found that "the evidence clearly supports by a preponderance of the evidence [Jeffers's] responsibility for at least one-and-a-half kilograms of crack cocaine." *Id.* At the conclusion of the hearing, the court sentenced Jeffers to 324 months on the conspiracy offense and 60 months on the firearm offense, to run consecutively.[3] The court also imposed a $25,000 fine and a $200 special assessment. On December 8, 2006, the court denied Jeffers's motions for a new trial and judgment of acquittal, and entered final judgment. On March 12, 2008, the court reduced Jeffers's sentence on Count One from 324 months to 262 months, because of retroactive amendments to the Sentencing Guidelines for crack cocaine convictions.

---

[2]Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

[3]The district court also sentenced Jeffers to five years of supervised release to each of Counts One and Fourteen, to run concurrently.

Jeffers filed a timely notice of appeal on December 20, 2006. We possess jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## II.

Jeffers's contentions on appeal are, for our analysis, grouped into five categories. First, Jeffers maintains that the district court deprived him of due process by conducting some of the trial proceedings off the record. Second, Jeffers contests the firearm offense conviction, asserting insufficiency of the evidence. Third, he challenges the jury instructions on multiple grounds. Fourth, Jeffers contends that the court committed two sentencing errors. Finally, he asserts that the prosecution engaged in misconduct related to its discovery obligations. We assess and dispose of these contentions in turn.

## A.

We first address Jeffers's assertion that he "has been prejudiced and deprived of his constitutional rights to due process" because certain proceedings in the district court were not transcribed by a court reporter. Br. of Appellant 30. In particular, Jeffers contends that the conduct of the charge conference "off the record" denied him a verbatim account of his lawyers' objections to the jury instructions.[4] In support of this contention, Jeffers relies on the Court Reporter Act, which mandates that "all proceedings in criminal cases had in open court" be recorded. 28 U.S.C. § 753(b). He contends that "'[r]esponsibility to ensure compliance with § 753(b) lies with

---

[4]Pertinent to these proceedings, the lack of a complete record of the district court proceedings impacts our standard of review. Where there is no record of Jeffers's objection to a particular jury instruction, we must review that instruction for plain error. In the face of a recorded objection to an instruction, however, our review is for harmless error. *See United States v. Foster*, 507 F.3d 233, 249 (4th Cir. 2007).

the court, not the reporter or the parties' and failure to record proceedings constitutes judicial error." Br. of Appellant 27 (quoting *United States v. Simpson*, 214 F. App'x 311, 313 (4th Cir. 2007)(unpublished)). We review de novo a constitutional challenge predicated on a district court's alleged noncompliance with the Court Reporter Act. *See United States v. Brown*, 202 F.3d 691, 696 (4th Cir. 2000).

It is clear that "a criminal defendant has a right to a meaningful appeal based on a complete transcript." *Brown*, 202 F.3d at 696 (internal quotation marks omitted). And a trial court's practice of conducting off-the-record charge conferences complicates our review process. In the end, however, counsel were responsible for placing their objections on the record at the earliest opportunity, and Jeffers is not entitled to rely on the court's alleged failure to comply with the Court Reporter Act.

Pertinent to this issue, the Seventh Circuit has explained that the Court Reporter Act "does not require the conference on jury instructions to be held in open court." *United States v. Murphy*, 768 F.2d 1518, 1535 (7th Cir. 1985). And the First Circuit has observed that "[w]hether or not an off-the-record conference occurs, counsel remains obligated . . . to put requests for instructions and objections on the record." *United States v. O'Dell*, 390 F.3d 145, 152 (1st Cir. 2004). In *O'Dell*, Judge Boudin emphasized that "counsel would be well advised to insist upon putting fully on the record any request or objection sought to be preserved on appeal." *Id.* at 152 n.5.

In this situation, there is no indication that Jeffers's lawyers were unable to object to the instructions in a timely fashion. Indeed, on the final day of trial, defense counsel objected to the instructions on four separate occasions. Then, following the charge to the jury, the court requested Jeffers's counsel to restate their objections to the instructions, advising them, "Tell me if you are satisfied with what I ultimately gave, if you want to preserve it for appeal." J.A. 742. After some dis-

cussion, one of Jeffers's lawyers responded, "The Court addressed our concerns . . . . We have no other objections, Your Honor." *Id.* In this circumstance, we reject Jeffers's contention that the lack of a transcript of the charge conference and other proceedings violated his due process rights.[5]

B.

We next address Jeffers's contention that the trial evidence was insufficient to convict him on the firearm offense. In assessing a challenge to the sufficiency of evidence, we view the evidence in the light most favorable to the prosecution and decide whether "substantial evidence" supports the verdict. *United States v. Smith*, 451 F.3d 209, 216 (4th Cir. 2006). Substantial evidence, we have explained, is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* (internal quotation marks omitted). In reviewing the sufficiency of the evidence, we are not entitled to assess witness credibility, and we assume that the jury resolved any conflicting evidence in the prosecution's favor. *See United States v. Foster*, 507 F.3d 233, 245 (4th Cir. 2007).

Count Fourteen charged that Jeffers "did use or carry a firearm during and in relation to a drug trafficking crime, and did possess a firearm in furtherance of a drug trafficking crime," specifically, the conspiracy offense in Count One. J.A. 19. In order to convict Jeffers on Count Fourteen, the prosecution was obliged to prove beyond a reasonable doubt that Jeffers (1) used, carried, or possessed a firearm (2) in furtherance of a drug trafficking crime. *See* 18 U.S.C. § 924(c)(1)(A). We

[5]Jeffers also identifies other trial proceedings and rulings that were not transcribed, but he fails to present any appellate challenges regarding those rulings. *See Brown*, 202 F.3d at 696 ("[T]o obtain a new trial . . . the defendant must show that the transcript errors specifically prejudiced his ability to perfect an appeal.").

have defined the phrase "in furtherance of" as "[t]he act of furthering, advancing, or helping forward"; thus, "§ 924(c) requires the government to present evidence indicating that the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime." *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002) (internal quotation marks omitted). Of importance, we observed in *Lomax* that, among "the numerous ways in which a firearm might further or advance drug trafficking . . . . a gun could provide a defense against someone trying to steal drugs or drug profits, or it might lessen the chance that a robbery would even be attempted." *Id.*

At trial, the evidence linked Jeffers to multiple firearms during the course of the conspiracy offense. Chu testified that he had supplied firearms to members of the conspiracy, including a MAC-11 machine gun and a 9 mm pistol to Jeffers. Wigington and Mewborn each testified that Jeffers had carried a firearm to prevent being robbed. Wigington stated that Jeffers indicated that, "if somebody was trying to rob him, he would shoot them." J.A. 89. Mewborn testified that Jeffers suggested that he kept firearms to guard against would-be robbers, and had, at least once, bragged about shooting someone. Jeffers also made it known to his coconspirators that he possessed numerous firearms, apparently to prevent robberies. Mewborn had seen Jeffers with a 9 mm and a MAC-11, and Jackson had seen Jeffers with a .45 caliber pistol. Johnson recounted a trip to Washington, D.C., when Jeffers entered his mother's residence and came out with a black semiautomatic pistol. Additionally, Wigington, Mewborn, Jackson, and Johnson recalled Jeffers displaying guns to others. Wigington testified that Jeffers had shown him a black pistol with gold trim while they were at Jeffers's mother's residence, and that Jeffers would sometimes pull the pistol out of his pants "just to show it" to him. *Id.* at 87.

Assessed in the light most favorable to the prosecution, there was substantial evidence that Jeffers used, carried, or

possessed a firearm in furtherance of the conspiracy offense charged in Count One. A reasonable trier of fact was entitled to find Jeffers guilty of the firearm offense, and we reject this aspect of Jeffers's appeal.[6]

## C.

Next, we assess Jeffers's contention that the trial court erred in multiple respects in its instructions to the jury. First, Jeffers presents two challenges with respect to the instructions on the firearm offense, and we readily reject them.[7] He also presents challenges concerning the conspiracy offense: that the court erred in instructing the jury on a single-conspiracy theory, to the exclusion of a multiple-conspiracy theory; that the court erred in permitting the jury to infer that Jeffers har-

---

[6]Jeffers also contends that the trial evidence on the firearm offense is distinguishable from our precedent concerning § 924(c) because "no guns or drugs were ever seized from Mr. Jeffers." Br. of Appellant 36. We reject this contention because a firearm need not be seized to sustain a § 924(c) conviction. *See United States v. Jones*, 907 F.2d 456, 460 (4th Cir. 1990).

[7]With respect to the firearm offense, Jeffers asserts that the trial court failed to instruct the jury that unanimity was required as to the *actual firearm* that Jeffers had used, carried, or possessed in furtherance of the conspiracy offense. This contention is foreclosed, however, by our recent decision in *United States v. Perry*, 560 F.3d 246, 257 (4th Cir. 2009) (explaining that "where the charge involves multiple firearms, jury unanimity with respect to the particular firearm used or possessed . . . is generally not required for a § 924(c) conviction"). Jeffers also contends that the trial court should have instructed the jury that it had to find that Jeffers "actively employed" the firearm "during and in relation to the commission of [the conspiracy] offense" to convict him on Count Fourteen. Br. of Appellant 24. As Jeffers correctly states, in *Bailey v. United States*, the Supreme Court recognized that § 924(c)(1) — as then written — required "active employment." 516 U.S. 137, 150 (1995). Importantly, however, *Bailey* did not address the "possesses" prong, which was thereafter added to § 924(c). *See Lomax*, 293 F.3d at 703 (explaining that Congress amended § 924(c) "in the wake of . . . *Bailey*"). Under the current version of § 924(c), an "active employment" instruction is not required, and the court properly instructed the jury on the elements of the firearm offense.

bored consciousness of guilt because he sought to conceal himself after he was indicted; and that the court committed what is commonly called "*Collins* error" in its instructions on the conspiracy offense. We address in turn the various contentions of instructional error with respect to the conspiracy offense.

A trial court's jury instructions are reviewed for abuse of discretion. *See United States v. Singh*, 518 F.3d 236, 249 (4th Cir. 2008). Of course, an error of law constitutes an abuse of discretion. *See United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009). In assessing the propriety of instructions, we will not reverse a conviction so long as the instructions, taken as a whole, adequately state the controlling legal principles. *See United States v. Bolden*, 325 F.3d 471, 486 (4th Cir. 2003).

1.

Jeffers maintains that — based on the evidence — the district court should have given the jury a multiple-conspiracy, as opposed to a single-conspiracy, instruction on Count One. More specifically, Jeffers claims that with a single conspiracy charged in Count One, and only multiple conspiracies shown by the trial evidence, the instructions created a prejudicial variance. Jeffers concedes, however, that he did not present this contention to the trial court, and that it is subject to plain error review only. To show plain error, Jeffers must identify an error that is plain and that substantially affects his rights. *See United States v. Olano*, 507 U.S. 725, 732 (1993).

We have heretofore explained that "[a] single conspiracy exists, when the conspiracy had the same objective, it had the same goal, the same nature, the same geographic spread, the same results, and the same product." *United States v. Johnson*, 54 F.3d 1150, 1154 (4th Cir. 1995) (internal quotation marks omitted). Error will be found in a conspiracy instruction "if the proof of multiple conspiracies was likely to have confused

the jury into imputing guilt to [the defendant] as a member of one conspiracy because of the illegal activity of members of the other conspiracy." *United States v. Roberts*, 262 F.3d 286, 294 (4th Cir. 2001).

The trial evidence overwhelmingly proved the existence of a crack cocaine distribution conspiracy operating out of Shriver's Motel and showed Jeffers's substantial role in it. Jackson, Carter, and Giles recalled sales of crack cocaine that occurred around the clock at Shriver's Motel. Wigington, Mewborn, and Johnson described Jeffers as the "biggest" dealer at Shriver's Motel, and Carter said that Jeffers was one of the top three drug dealers operating there. The jury also heard testimony that Jeffers had recruited others to sell crack. Johnson testified that Jeffers sold the highest quality crack, that he gave the best value for the money, and that there were times when other drug dealers at Shriver's Motel depended on Jeffers to supply them with drugs. Following his arrest, Jeffers bragged to Lewis that if Lewis sold cocaine in northwest Washington or northern Virginia, it was probably Jeffers's product.[8] Jeffers also admitted to Lewis that he had purchased cocaine in Florida for a good price.

Several witnesses provided corroborating testimony about Jeffers's identity and his involvement in the conspiracy. Arrington, Mewborn, Carter, Johnson, and Giles knew Jeffers by the same nickname, "Face." Witnesses confirmed that Jeffers drove one or more Cadillac automobiles during the conspiracy, and others stated that he was known to ride a distinctive motorcycle. Jackson observed Jeffers take paper bags of drugs from under his motorcycle seat more than five times. Wigington, Jackson, and Newborn testified that Jeffers "cooked" cocaine into crack, and Wigington testified that Jeffers taught him how to cook crack. Other witnesses confirmed

---

[8]Cocaine, sometimes also called powder cocaine, is the substance from which crack cocaine is made, and its possession and distribution was thus relevant to the conspiracy offense in Count One.

that Jeffers routinely "fronted" crack to other dealers, resulting in debts being owed to him. Wigington, Jackson, and Johnson made trips to Washington, D.C., with Jeffers to get drugs. Jeffers, in addition to residing at Shriver's Motel, sometimes stayed at a local residence in Luray, which had been rented by Pettis, another dealer at Shriver's. At that residence, Jeffers was seen counting shoe boxes containing thousands of dollars in cash obtained from drug sales. Wigington, Jackson, Mewborn, and Carter described Jeffers's distinctive manner of packing cocaine in large red pellets, and Jeffers confirmed to one witness that the drugs had been smuggled inside the body of a female conspirator. Other witnesses testified that Jeffers told them that he travelled internationally to obtain cocaine. Wigington, Jackson, Chu, Mewborn, and Carter saw Jeffers possess one to five ounces of cocaine. Indeed, Jackson testified that Jeffers "[n]ever ran out" of cocaine to sell. J.A. 158.

On the evidence, the district court thus did not err in instructing the jury on the single-conspiracy alleged in Count One. The fact that Jeffers may have competed with some of his coconspirators did not defeat the prosecution's theory that they were all members of a single conspiracy. Additionally, the evidence showed that the multiple drug dealers at Shriver's Motel engaged in "a consistent series of smaller transactions," which comprised a single conspiracy. *See United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir. 1993) (internal quotation marks omitted). As we observed in *Banks*, a drug conspiracy may "result[ ] in only a loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market." *Id.* As such, there was no instructional error — much less plain error — made by the trial court in this respect.

2.

Jeffers next contends that the district court erroneously instructed the jury that it was entitled to infer consciousness

of guilt if it found that Jeffers had sought to conceal his identity after learning of the Indictment. In this respect, Jeffers asserts that the court's concealment instruction was not adequately supported by the evidence. Again, however, Jeffers also failed to object to the concealment instruction, and we review this contention for plain error only.

We have recognized that, "in appropriate circumstances, a consciousness of guilt may be deduced from evidence of flight and that a jury's finding of guilt may be supported by consciousness of guilt." *United States v. Obi*, 239 F.3d 662, 665 (4th Cir. 2001). In order to do so, however, a jury must "be able, from the evidence, to link such flight to consciousness of guilt of the crime for which the defendant is charged," and the prosecution must offer "evidence supporting all the inferences in the causative chain between flight and guilt." *Id.* "To establish this causal chain," we have emphasized, "there must be evidence that the defendant fled or attempted to flee and that supports inferences that (1) the defendant's flight was the product of consciousness of guilt, and (2) his consciousness of guilt was in relation to the crime with which he was ultimately charged and on which the evidence is offered." *Id.* at 665-66.

At trial, the prosecution presented evidence that Jeffers had concealed himself from the authorities following the unsealing of the Indictment on September 16, 2004:

- A deputy U.S. Marshal testified that when Jeffers was arrested, he was riding in a car and misled the arresting officers as to his true identity. Jeffers presented the Marshal with a credit card bearing the name "Anthony Jones," and maintained that he was Anthony Jones for one or two minutes before acknowledging his true identity.

- Jeffers's mother stated that she had "stopped seeing him in the way that" she used to after federal

agents came to her home looking for Jeffers in
November 2004. J.A. 614.

- Jeffers's neighbor admitted not seeing Jeffers
"[f]or the past year and a half or two years," dat-
ing back to the unsealing of the Indictment. J.A.
624.

- Jeffers maintains that this evidence was inade-
quate to support a concealment finding, and that
the court's concealment instruction constitutes
reversible error.

On this record, however, sufficient evidence existed to sup-
port a jury finding that Jeffers sought to conceal himself after
he was indicted, that his efforts at concealment resulted from
his consciousness of guilt, and that such consciousness of
guilt related to the crimes with which he was charged. We
thus reject Jeffers's contention that the trial court's instruction
on concealment was plainly erroneous.

3.

Next, Jeffers maintains that, with respect to the conspiracy
offense, the trial court failed to instruct the jury that it had to
determine the quantity of cocaine base attributable to him.
This error, he asserts, requires that his sentence on the con-
spiracy offense be vacated.

In *United States v. Collins*, in 2005, we held that, in order
to properly apply the sentencing provisions of § 841(b)(1) in
a § 846 drug conspiracy prosecution, the *jury* must determine
that the threshold drug quantity was reasonably foreseeable to
the defendant. *See* 415 F.3d 304, 314 (4th Cir. 2005). In this
prosecution, the district court instructed the jury that it had to
find that "the object of the unlawful plan was to distribute or
possess with intent to distribute at least 50 grams of a sub-
stance containing a detectable amount of cocaine base." J.A.

758. The court instructed that, "once it has been shown that a conspiracy exists, the evidence need only establish, beyond a reasonable doubt, a slight connection between the defendant and the conspiracy to support conviction." *Id.* Finally, the verdict form asked the jury, "Do you find the defendant . . . guilty beyond a reasonable doubt of knowingly conspiring to distribute or possess with the intent to distribute more than fifty (50) grams of a mixture or substance containing cocaine base?" *Id.* at 753. Thus, because there was no instruction requiring a jury determination of the quantity of cocaine base reasonably foreseeable to Jeffers, *Collins* error was committed. Notably, however, Jeffers did not preserve an objection on the *Collins* issue, and we review this contention for plain error only.[9]

In order to obtain relief under plain error review, Jeffers must show that an error occurred, that the error was plain, and that it affected his substantial rights. *See Olano*, 507 U.S. at 732. Even if he makes such a showing, however, we can decline to correct the error unless it "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *See United States v. Harris*, 498 F.3d 278, 292-93 (4th Cir. 2007) (internal quotation marks omitted). The Supreme Court has recognized that, where the evidence against a defendant is "overwhelming and essentially uncontroverted," a plain error does not "seriously affect the fairness, integrity, or public reputation of judicial proceedings," and a reviewing court can choose not to recognize it. *United States v. Cotton*, 535 U.S. 625, 632-33 (2002). In *United States v. Foster*, we further explained that if the evidence "overwhelmingly establishe[s]" that the defendant was personally responsible for the threshold quantity of drugs, and if his trial assertions "primarily focused on whether he committed the offenses and not on

---

[9]Jeffers contends in his appellate brief that he preserved the error because he objected at sentencing. Because this objection was made in a tardy fashion, however, it was insufficient to preserve the *Collins* issue.

the drug quantities reasonably foreseeable to him," we may decline to recognize a plain *Collins* error. *See* 507 F.3d at 252.

In this situation, the trial court's instructions on the Count One conspiracy offense constituted plain error. *See Foster*, 507 F.3d at 251-52.[10] We are nevertheless satisfied that the Count One conviction should be upheld because the *Collins* error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See id.* Overwhelming evidence established that Jeffers was personally responsible for the conspiracy's distribution of 50 grams or more of crack. The jury heard evidence that Jeffers was the biggest dealer at Shriver's Motel; he had recruited and schooled multiple crack dealers and directed others to sell crack; Jeffers replenished the supplies of other dealers; he fronted crack to others; and he travelled internationally to obtain cocaine supplies. Indeed, five witnesses saw Jeffers with one to five ounces of cocaine (28 to 140 grams), and one witness stated that Jeffers "never ran out" of cocaine to sell. Additionally, Jeffers's trial assertions primarily focused on the issue of his guilt, rather than on drug quantity. Jeffers has thus failed to show that his sentence of 262 months on the conspiracy offense seriously affects the fairness, integrity, or public reputation of judicial proceedings, and we are satisfied to reject his contention in this regard.

D.

We next assess Jeffers's contentions of sentencing error. First, Jeffers asserts that the court erred in attributing 1.5 kilograms of cocaine base to him for sentencing purposes. Second, he maintains that the court contravened his Fifth Amendment rights in imposing a $25,000 fine. As explained below, we reject these contentions as well.

---

[10]Jeffers's rights were substantially affected by the *Collins* error because he was sentenced to 264 months imprisonment, 24 months greater than the maximum of 240 months that he could have received under § 841(b)(1)(C).

1.

A sentencing court is obliged to make factual determinations by a preponderance of the evidence. *See United States v. Brika*, 487 F.3d 450, 459 (4th Cir. 2007). We review such a court's findings of fact for clear error, reversing such findings only if we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Harvey*, 532 F.3d 326, 336 (4th Cir. 2008) (internal quotation marks omitted).

Put simply, the district court did not clearly err in finding Jeffers responsible for more than 1.5 kilograms of crack. At trial, multiple witnesses testified about Jeffers's drug distribution business in the Luray area. Witnesses testified that the illicit drug operations at Shriver's Motel were carried on around the clock, and Jeffers was described as the biggest dealer there. Wigington had dealt drugs with Jeffers from the late 1990s until 2002, when Shriver's Motel was raided. Wigington could readily obtain "anywhere from four to five ounces, or maybe more" of crack cocaine from Jeffers, who would even then have a large supply of crack remaining. J.A. 74. Wigington "couldn't even put a number to how many times" he bought cocaine from Jeffers. *Id.* at 77. He testified that he owed Jeffers "maybe [$]10,000, maybe more" for cocaine, and that the price for an ounce of cocaine was $1100. *Id.* at 79. Indeed, Wigington had seen Jeffers counting shoeboxes full of cash. Beginning in early 2000, Jackson bought from a half-ounce to an ounce of crack from Jeffers on a weekly basis. He had seen Jeffers take cocaine from one-ounce pellets and cook crack approximately ten times. Jackson personally witnessed Jeffers selling crack in Luray on almost a daily basis. Finally, Mewborn and Carter regularly bought crack from Jeffers and saw him with several ounces of cocaine.

Because of the overwhelming evidence of the quantities of crack and powder cocaine that were bought from Jeffers and

that he had possessed, the district court did not clearly err in finding that Jeffers was responsible for over 1.5 kilograms of crack. We thus reject this sentencing contention.

2.

We next address Jeffers's contention that the district court erred in imposing a $25,000 fine, because, he asserts, the fine was imposed as retribution for the exercise of his Fifth Amendment right against self-incrimination. A sentencing court should not utilize a defendant's invocation of the Fifth Amendment as negative evidence to penalize him at sentencing. *See Mitchell v. United States*, 526 U.S. 314, 327 (1999). In order to find that a court so erred, however, the record must reflect that the court "actually relied" on the defendant's refusal to disclose information in imposing punishment. *Blair v. United States*, 665 F.2d 500, 508 (4th Cir. 1981).

At sentencing, Jeffers's lawyer represented to the district court that her client did not intend to divulge his financial assets to the probation officer, for fear that doing so could incriminate him and thus hamper his chances for a successful appeal. In response, the court stated that "the inference should be drawn against Mr. Jeffers because of this in terms of sentencing." J.A. 913. It then found "that the guidelines recommend to the Court a fine of 25,000 to four million dollars." *Id.* at 915.

Notwithstanding the sentencing court's statement that an inference should be drawn against Jeffers for his refusal to divulge financial information, the record does not show that the court actually relied on this fact in deciding to impose the fine. To the contrary, the court imposed the minimum fine called for by the Sentencing Guidelines. And when the court explained its decision on the fine, it did not mention Jeffers's refusal to submit financial information. Rather, the court determined that Jeffers was capable of paying the fine, noting his regular employment during the conspiracy. Because there

is no showing that the court treated Jeffers's refusal as "negative evidence" and actually relied on it in deciding to impose the minimum fine of $25,000, we reject his contention on this point.

## E.

Finally, we turn to Jeffers's contention that the prosecution failed to comply with its discovery obligations, under both Rule 16 of the Federal Rules of Criminal Procedure and *Brady v. Maryland*, 373 U.S. 83 (1963). As explained below, although we hardly approve of the handling of such discovery, we nonetheless reject this contention.

## 1.

Rule 16(a)(1)(E) mandates that, "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph" certain specified materials. Jeffers claims that, in response to his Rule 16 request, the prosecution prepared a binder that "containing all information regarding the numerous controlled buys that make up the heart of the Government's evidence in this case." Br. of Appellant 54. The prosecution, however, refused to provide a copy of the binder's contents to Jeffers's lawyers, notwithstanding repeated requests. Instead, Jeffers was merely allowed to have his lawyers inspect the binder's contents and, even then, the lawyers had to conduct their inspection in the United States Attorney's office. The prosecution maintains, in response, that it had an "open file" policy with respect to Rule 16, but "[i]n recognition of the sensitive nature of many of these documents," would not allow all documents to be copied. Br. of Appellee 69. According to the prosecution, it utilized a "case-by-case" method, under which it was willing to consider Jeffers's request to copy specific documents. *Id.*

Put simply, the prosecution failed to comply with its obligations under Rule 16. The Rule's mandatory language is

unambiguous; the prosecution "*must* permit the defendant to inspect *and to copy*." Fed. R. Crim. P. 16(a)(1)(A) (emphasis added). Such a failure to comply with Rule 16 was unwarranted and inconsistent with the obligations of the United States Attorney.[11] Nevertheless, Jeffers has failed to identify how he was prejudiced by the prosecution's failure to comply with its discovery obligations. We are, in these circumstances, unable to conclude that the outcome of Jeffers's trial would have been different had the prosecutors acted properly. As a result, we are unable to provide any relief on this claim.

2.

Finally, Jeffers asserts that his convictions must be vacated because the prosecution also failed to fulfill its discovery obligations under *Brady*. On the second day of the prosecution's case-in-chief, Giles, a confidential informant, testified about multiple controlled drug buys at Shriver's Motel, and said that he had purchased drugs from Jeffers. Giles also revealed that, following each controlled buy, he was debriefed by the police and that those conversations were recorded. During Giles's testimony, one of Jeffers's lawyers advised the court that she had not been provided with any such tapes in discovery, and requested that they be provided to the defense. That evening, the prosecution produced thirty-six such tape recordings that Jeffers's lawyers were allowed to hear, but only in the pres-

---

[11]We expect prosecutors to conform their conduct to their responsibilities. As Justice Sutherland appropriately observed many years ago:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereign whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done . . . . He may prosecute with earnestness and vigor — indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones.

*Berger v. United States*, 295 U.S. 78, 88 (1935).

ence of the prosecutors. After listening to the tapes, the defense lawyers decided that the tapes were exculpatory and impeaching, in that Jeffers was never mentioned in any of them, by name or description.

The next day, Jeffers's lawyers sought to strike Giles's testimony, asserting that the prosecution had contravened its *Brady* obligations by not disclosing that the tapes of Giles's debriefings failed to refer to or incriminate Jeffers, and therefore constituted exculpatory and impeachment materials. In response, the prosecution asserted that the binders that the prosecution had allowed the defense to inspect in pretrial proceedings contained reports discussing the tape recordings. The prosecution then suggested that the tapes be played for the jury, and the trial court and Jeffers agreed. Upon redirect examination of Giles, the prosecution sought to refresh Giles's memory by playing three of the tapes for him. When Giles was asked whether the person he had bought drugs from was in the courtroom, he responded, "He is not." J.A. 560. As a result, the court granted judgment of acquittal to Jeffers on Counts Two, Three, and Four of the Indictment, which charged § 841(a)(1) distribution offenses.

In order to establish a *Brady* violation, Jeffers is obliged to show that the non-disclosed evidence was (1) favorable to him, (2) that it was material to his defense, and (3) that the prosecution possessed it and failed to timely disclose it to Jeffers. *See United States v. Stokes*, 261 F.3d 496, 502 (4th Cir. 2001). Evidence will be deemed "favorable" if it is either exculpatory or if it can be used as impeachment evidence. *See United States v. Bagley*, 473 U.S. 667, 676 (1985). Such evidence is properly considered as "material" if there is a "reasonable probability" that its timely disclosure would have produced a different result. *See id.* at 682. A "reasonable probability" exists if the failure to make such a disclosure "undermines confidence in the outcome of the trial." *Id.* at 678. As we have explained, however, "where exculpatory information is not only available to the defendant but also lies

in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine." *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990). Additionally, there is no *Brady* violation if the defense is aware of the evidence in time to reasonably and effectively use it at trial. *See United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985).

Notwithstanding the trial court's award of judgments of acquittal on Counts Two, Three, and Four, Jeffers contends that he is entitled to have his two convictions vacated, because the prosecution failed to timely disclose the audiotapes. Such relief is warranted, he maintains, because "[i]ncurable prejudice resulted, not only from Giles being allowed to testify as to what amounted to irrelevant prejudicial testimony about narcotics activities unrelated to [Jeffers,] but incurable prejudice also resulted from the Government's untimely disclosure of the briefing tapes." Br. of Appellant 53. Giles was one of the final witnesses called by the prosecution, and several of the earlier witnesses had claimed to be Jeffers's coconspirators. Jeffers maintains that, if he had been made aware of the exculpatory tapes in a timely fashion, he could have used them to impeach other prosecution witnesses. Thus, he insists, "[t]he failure of the Government to produce the exculpatory evidence . . . constitutes reversible error because . . . the timely production of this evidence would have affected the outcome of the trial." *Id.* The prosecution responds that it acted properly for three reasons. First, Jeffers received the tapes in time to use them at trial; second, the tapes were used at trial and played to the jury; and third, Jeffers was on notice that the tapes existed prior to trial. Thus, the prosecution argues, Jeffers "is not entitled to the benefit of the *Brady* doctrine." *Id.* at 65.

In this situation, Jeffers is not entitled to relief under *Brady* because he is unable to show how the undisclosed evidence was either favorable or material with respect to the two counts of conviction. Regardless of whether the tapes were men-

tioned in the materials shown to the defense prior to trial, there is no indication that their disclosure would have made any difference in the trial, beyond discrediting Giles's testimony. Furthermore, given the overwhelming evidence of Jeffers's role in the conspiracy offense, coupled with the fact that the jury heard the tapes, there is no indication that the prosecution's unnecessarily tardy disclosures "undermines confidence in the outcome in the trial." *Bagley*, 473 U.S. at 678. In these circumstances, we also reject Jeffers's *Brady* claim.

### III.

Pursuant to the foregoing, we reject each of Jeffers's contentions and affirm his convictions and sentences.

*AFFIRMED*

NIEMEYER, Circuit Judge, concurring:

I concur in the court's opinion. I add, however, my continuing objection to our application of *United States v. Collins*, 415 F.3d 304 (4th Cir. 2005), which remains inconsistent with well-established conspiracy law, as defined by 21 U.S.C. § 846 and governing Supreme Court decisions, such as *United States v. Shabani*, 513 U.S. 10, 13-14 (1994). *See United States v. Brooks*, 524 F.3d 549, 565-79 (4th Cir. 2008) (Niemeyer, J., dissenting). Our court should have seized this opportunity to correct the problem, although, I suspect, it will have to be the Supreme Court and not our court that does so.