**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4078**

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

MANCER L. BARRINGTON, III,

                    Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Raymond A. Jackson, District Judge. (2:08-cr-00004-RAJ-FBS-2)

Submitted: January 25, 2010        Decided: February 19, 2010

Before WILKINSON, MICHAEL, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Lawrence H. Woodward, Jr., Charles B. Lustig, SHUTTLEWORTH, RULOFF, SWAIN, HADDAD & MORECOCK, PC, Virginia Beach, Virginia, for Appellant. Dana J. Boente, United States Attorney, D. Monique Broadnax, Special Assistant United States Attorney, Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Mancer L. Barrington, III, appeals his conviction for conspiracy to distribute and possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846 (2006), and possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) (2006). Finding no reversible error, we affirm.

## I.

On November 8, 2007, Norfolk Police Department Vice and Narcotics Investigators Jemal Davis, Richard Stocks, and Lionel Jackson were traveling in an unmarked police vehicle searching for Stephen Wesby, whom they suspected of drug activity. The officers observed a silver Infiniti Q-45; suspecting that it was Wesby's vehicle, the officers followed it to a residence at 2738 Victoria Avenue in Norfolk. The driver exited the car, entered the house and remained there for five to seven minutes, returned to the car, and drove away. The officers thereafter initiated a traffic stop of the vehicle on the ground that its middle brake light was not functioning. The driver's identification revealed him to be Mancer Louis Barrington, III. Officer Davis noted a strong marijuana odor, and Barrington volunteered that he was currently on bond for possession with intent to distribute marijuana. After Officer

Davis informed Barrington that he smelled marijuana, Barrington admitted to smoking marijuana the night before and conceded that the odor could be coming from his jacket. Barrington consented to a search of his person, which revealed $3834 in cash. A drug dog then alerted to the glove compartment of the vehicle, where the officers uncovered $10,780 in cash. After this finding, the officers arrested Barrington.

The officers then returned to the residence on Victoria Avenue, where the owner gave the officers consent to search for narcotics and contraband. As the officers entered the residence, Malik Carson, one of the residents, was walking down stairs wearing a cooking apron; upon reaching the bottom of the stairs, Carson fled out the front door. Officer Davis proceeded upstairs, where he recovered a cell phone, nine sandwich bags of cocaine, crack cocaine drying on a napkin, a loaded revolver, a digital scale, baking soda, a hot plate, a box of sandwich bags, and a combination safe. When officers apprehended Carson, they recovered two bags of cocaine powder, seven sandwich bags of crack cocaine, and $820. Later testing confirmed that the substances recovered from the upstairs room and Carson's person amounted to 34.92 grams of cocaine base and 291.06 grams of cocaine.

Carson would later inform investigators that he and Barrington had been friends since childhood. Carson began

3

selling cocaine and cocaine base in 2007 and, after his grandmother passed away in September 2007, he approached Barrington about furnishing additional cocaine for Carson to sell to help keep his grandmother's house. At the time of his arrest, Carson was purchasing from Barrington 14 grams of cocaine for $400 on a weekly basis.

Evidence at trial indicated that on November 8, 2007, Carson had called Barrington at 11:49 a.m. to request more cocaine; Barrington missed the call but called him back at 11:51 a.m. and again at 12:02 p.m. Barrington agreed to meet Carson at the Victoria Avenue residence. Upon arriving at the house, Barrington told Carson that he thought the police were following him and that he wanted to leave the cocaine and his firearm with Carson. Because Carson had not heard from Barrington after he left the house, Carson called Barrington's cell phone at 1:31 p.m. The police investigators arrived at the house at roughly 2:35 p.m.

Barrington and Carson were ultimately indicted for conspiracy to distribute and possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846 (2006) (Count One), possession with intent to distribute cocaine base and cocaine, respectively, in violation of 21 U.S.C. § 841(a)(1) (2006) (Counts Two and Three), and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18

4

U.S.C. § 924(c) (2006) (Count Four). The indictment charged Barrington alone with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g) (2006) (Count Five).

Barrington filed a pretrial motion to suppress the currency and cell phones recovered from him during the November 8 traffic stop, which the district court granted. The motion to suppress covered all evidence and statements obtained from Barrington during the traffic stop, including the two cell phones found on Barrington's person.

Prior to trial, Carson pleaded guilty to Count One and agreed to testify against Barrington. Carson also consented to a search of his cell phone, which revealed the calls to Barrington on November 8. Based upon this information, investigators obtained a warrant to search the cell phones retrieved from Barrington during the traffic stop. Thereafter, Barrington filed a motion in limine, seeking to exclude evidence from his two cell phones, which the district court denied.

The district court conducted a four-day jury trial. During voir dire, Barrington raised a Batson challenge after the Government struck four of the eight African-American members of the jury pool. After considering the Government's nondiscriminatory reasons for the strikes, the district court ordered the Government to withdraw one of its four strikes. The

5

jury as finally composed contained four African-Americans, including the juror reinstated to the panel.

At the close of the Government's evidence, Barrington moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. The district court granted the motion as to Count Five, finding that the Government had failed to introduce any evidence of a prior felony conviction. The district court denied the motion as to the other counts. Barrington then filed a written Rule 29 motion contending that Count Two and Count Three were duplicative. The district court denied that motion, as well as the defendant's renewed Rule 29 motion at the close of all the evidence.

The jury found Barrington guilty of Count One and Count Three, and acquitted him on Count Two and Count Four. Because Barrington had two prior convictions for felony drug offenses, Count One mandated a life sentence. See 21 U.S.C. § 841(a)(1) & (b)(1)(A) (2006). Accordingly, the district court sentenced Barrington to life imprisonment on Count One and 360 months imprisonment on Count Three, to be served concurrently. Barrington filed a timely appeal.

II.

On appeal, Barrington raises three challenges to his conviction, which we consider in turn.

6

A.

First, Barrington contends that the district court erred in allowing the Government to introduce evidence from his cell phone at trial. The parties agree that Barrington's argument is an extension of his earlier motion to suppress. We review the district court's findings of fact for clear error, "giv[ing] due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699 (1996). We review the district court's ultimate legal conclusion de novo. Id. And, "[b]ecause the district court denied the motion to suppress, we construe the evidence in the light most favorable to the government." United States v. Perkins, 363 F.3d 317, 320 (4th Cir. 2004).

During the November 8, 2007 traffic stop, police recovered two cell phones from Barrington. Barrington later moved to suppress the evidence obtained during that stop, and the district court granted that motion, suppressing all of the evidence seized during the traffic stop, including Barrington's cell phones. Prior to trial, however, Carson consented to a search of his cell phone, which was recovered during the search of the Victoria Avenue residence on November 8. Because a search of the call logs extracted from Carson's phone showed several calls between Carson and Barrington on November 8, investigators applied for a search warrant to search the two

7

cell phones recovered from Barrington. The search warrant was granted, but Barrington filed a motion in limine to exclude any evidence obtained from the warrant. The district court found the evidence admissible under the doctrine of inevitable discovery. At trial, the Government introduced a document listing the call log for Carson's phone, as well as a document providing the call log from Barrington's two phones.

On appeal, Barrington argues that the district court erred in permitting the Government to introduce the call logs from Barrington's cell phones. The improper admission of evidence is subject to harmless error review. See Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); Fed. R. Evid. 103(a) (noting evidentiary errors support reversal only if they affect "substantial right"). Erroneously admitted evidence is harmless if a reviewing court is able to "say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." Kotteakos v. United States, 328 U.S. 750, 765 (1946); United States v. Abu Ali, 528 F.3d 210, 231 (4th Cir. 2008).

Even assuming the district court erred in permitting the admission of the call logs for Barrington's phones, we conclude that the error is harmless. Barrington's physical

phones were never entered into evidence, only the log showing that he and Carson called each other several times on November 8, 2007. That information, however, is largely duplicative of the information provided by the call log for Carson's phone. Barrington does not contest the admissibility of that call log. The only difference between the two logs was that Barrington's call log included the length of each call, a minor distinction that is harmless. Moreover, the call logs were a small portion of the Government's case. Carson testified that he and Barrington spoke on the phone November 8, 2007, to set up their drug transaction; the call logs simply confirmed that testimony. Accordingly, this claim affords Barrington no relief.

B.

Next, Barrington challenges the sufficiency of the evidence used to convict him on Counts One and Three. Barrington bears a "heavy burden" in contesting the sufficiency of the evidence supporting a jury verdict. United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal quotation marks omitted). His conviction must be affirmed if, reviewing the evidence in the light most favorable to the Government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Burgos, 94 F.3d 849, 862-63 (4th Cir. 1996) (en banc). The Government receives the benefit of "all reasonable inferences

9

from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

Having reviewed the record, we conclude that the Government presented sufficient evidence to sustain the convictions on Count One and Count Three. As to Count One, conspiracy to distribute and possess with intent to distribute fifty or more grams of cocaine and cocaine base, the Government presented the testimony of Carson in addition to the testimony of four witnesses who testified to purchasing cocaine and/or cocaine base from Barrington in amounts ranging from 3.5 grams to 9 ounces. These witnesses testified to a similar pattern in making their purchases--that they would contact Barrington at a cell phone number, and that Barrington would drive alone to meet them. Likewise, they testified that Barrington charged $400 for 3.5 grams of cocaine (an "eight ball") and as much as $6500 for 9 ounces of cocaine. The witnesses identified several of the same locations where these drug transactions were consummated.

The Government also presented sufficient evidence to convict Barrington of Count Three, possession with intent to distribute 291.06 grams of cocaine. The cocaine referenced in Count Three was the total amount of cocaine recovered from the search of the Victoria Avenue residence. Three investigators testified that Barrington entered the residence and remained for several minutes. Carson testified that Barrington dropped off

10

the cocaine Carson had just ordered and also left additional cocaine because Barrington believed he was being followed by the police. The phone logs for Carson's cell phone corroborated this story: Carson called Barrington less than one hour before Barrington arrived at the Victoria Avenue residence and Barrington called Carson back two minutes later. Barrington then called Carson again ten minutes later. The amount of cocaine recovered from the search of the Victoria Avenue residence, when coupled with the additional contraband, including the digital scale, baking soda, hot plate, and sandwich bags, was sufficient to prove an intent to distribute.

Barrington attacks the credibility of Carson and the four additional witnesses against him, but the jury, not the reviewing court, is the judge of the witnesses' credibility. As we have explained, "[i]n reviewing the sufficiency of the evidence, we are not entitled to assess witness credibility, and we assume that the jury resolved any conflicting evidence in the prosecution's favor." United States v. Jeffers, 570 F.3d 557, 565 (4th Cir.), cert. denied, 130 S. Ct. 645 (2009). Accordingly, we reject Barrington's challenge to the sufficiency of the evidence.

C.

Finally, Barrington argues that the Government violated Batson v. Kentucky, 476 U.S. 79 (1986), in striking

11

four African-American members of the venire panel. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution forbids the use of peremptory challenges for a racially discriminatory purpose. See Batson, 476 U.S. at 86.

Batson created a three-step process for evaluating claims that peremptory challenges were used in a discriminatory manner.

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

Hernandez v. New York, 500 U.S. 352, 358-59 (1991).

As to the prosecutor's burden under the second step, the Court has explained, "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Hernandez, 500 U.S. at 360; see also Purkett v. Elem, 514 U.S. 765, 769 (1995) ("What it means by a 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection.").

Finally, in the third prong, "[t]he trial court then [has] the duty to determine if the defendant has established purposeful discrimination." Batson, 476 U.S. at 98. Because a "judge's findings in the context under consideration here

12

largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." Id. at 98 n.21; Hernandez, 500 U.S. at 364. Thus, a finding of no discrimination is a factual finding reviewed for clear error. Hernandez, 500 U.S. at 364; Jones v. Plaster, 57 F.3d 417, 421 (4th Cir. 1995).

We find no clear error in the district court's denial of Barrington's Batson challenge. Barrington, an African-American, raised a Batson challenge after the Government struck four of the eight African-American members of the venire. The Government proffered a non-discriminatory reason for each strike: the Government struck one female juror because she was sleeping, another female juror because of her demeanor and disinterested appearance, and a third female juror because she had a family member who was a drug addict. Finally, the Government struck a fourth female juror because she worked for a rental car company. The district court noted that the reasons were "nondiscriminatory" but found some of the "bases to be insubstantial." The district court thus ordered the Government to withdraw the strike of the rental car agent and permitted the others to stand.

On appeal, Barrington simply states that striking fifty percent of the African-American jurors proves discrimination. We conclude, however, that such meager

statistical evidence, while probative under <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240-41 (2005), cannot alone carry the day. <u>See, e.g.</u>, <u>Coulter v. McCann</u>, 484 F.3d 459, 468 (7th Cir. 2007) (denying habeas relief under <u>Batson</u> and <u>Miller-El</u> where prosecution used ninety percent of its strikes against African-American jurors). More importantly, the statistical evidence is not entirely favorable to Barrington. Four members of the jury that was ultimately seated were African-Americans and the Government passed the first four African-American members of the jury panel. Barrington has marshaled no additional evidence of intentional discrimination and, accordingly, the district court did not commit clear error in denying his <u>Batson</u> challenge.

## III.

For the foregoing reasons, Barrington's conviction and sentence are affirmed. As Barrington is represented by counsel, we deny his motion to file a pro se supplemental brief. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

14