**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 08-4798**

───────────

UNITED STATES OF AMERICA,

                 Plaintiff - Appellee,

    v.

STEVEN EDDINGTON,

                 Defendant - Appellant.

───────────

**No. 08-4799**

───────────

UNITED STATES OF AMERICA,

                 Plaintiff - Appellee,

    v.

TIMOTHY WAYNE EDDINGTON,

                 Defendant - Appellant.

───────────

Appeals from the United States District Court for the District of South Carolina, at Rock Hill.  Cameron McGowan Currie, District Judge. (0:07-cr-01149-CMC-02; 0:07-cr-01149-CMC-01)

───────────

Argued: January 28, 2011          Decided: March 11, 2011

───────────

Before WILKINSON, AGEE, and DAVIS, Circuit Judges.

───────────

Affirmed by unpublished per curiam opinion.

**ARGUED**: Steven Michael Hisker, Duncan, South Carolina; James P. Rogers, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellants. Thomas Ernest Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF**: W. Walter Wilkins, III, United States Attorney, Robert C. Jendron, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following separate jury trials, co-defendants Timothy Wayne Eddington and his son, Steven Eddington, were convicted of conspiracy to commit bank robbery, in violation of 18 U.S.C. §§ 371, 2113(a) (2006); carrying an explosive during the commission of a felony, in violation of 18 U.S.C. § 844(h)(2) (2006); possession of unregistered destructive devices, in violation of 26 U.S.C. § 5861(d) (2006); and possession of destructive devices in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (2006). In addition, Timothy was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (2006). Timothy and Steven received sentences of 600 months and 521 months, respectively. We reject each of the Appellants' assignments of error and affirm the convictions and sentences.

I.

On appeal, Timothy Eddington raises six issues, and Steven joins in the final three.[1] First, Timothy argues that the

---

[1] Timothy has also filed a pro se motion to relieve his attorney, a supplemental brief, and a statement offering to serve more time in prison or receive a death sentence in exchange for a new trial for Steven, who was eighteen years old at the time of the offenses. We deny Timothy's motion to relieve his attorney, and we decline to consider his supplemental brief, since he is represented by counsel. Further, we note that the district court conducted a thorough colloquy with Timothy before he decided to testify at his own trial.

district court should have suppressed his statements because they were induced by a law enforcement agent's false promise to charge him only with trespassing. Second, he argues the district court should have granted a mistrial after co-defendant William Puckett stated that Timothy obtained money for the pipe bomb supplies from "another crime." Third, he argues the prosecutor improperly shifted the burden of persuasion to the defense by arguing that Timothy could have called Steven's girlfriend, Christy Barnes, as a witness.

Together, the Eddingtons contend: (1) possession of the pipe bombs did not further any conspiracy under 18 U.S.C. § 924(c); (2) the evidence was insufficient to support the conspiracy charge; and (3) convictions for 18 U.S.C. § 924(c) and 18 U.S.C. § 844(h) violate double jeopardy because the provisions "are essentially identical." We consider these contentions in turn.

### A.

We determine whether a confession was unconstitutionally coerced by the totality of the circumstances. See Arizona v. Fulminante, 499 U.S. 279, 285-86 (1991). The existence of a promise in connection with a confession does not render a confession per se involuntary. See id.; United States v. Braxton, 112 F.3d 777, 780 (4th Cir. 1997) (en banc) ("The mere existence of threats, violence, implied promises, improper

4

influence, or other coercive police activity . . . does not automatically render a confession involuntary."). In this case, the record fully supports the district court's denial of the motion to suppress.

York County Sheriff's Department Captain Jerry Lee Hoffman read Timothy his Miranda rights and had Timothy read them out loud himself. Hoffman ended an initial interview because Timothy said he was not feeling well, and Hoffman reviewed Timothy's rights before commencing the second interview. Furthermore, Timothy does not point to any evidence of coercion other than Hoffman's alleged promise that Timothy would only face a trespassing charge, and this alleged promise did not involve actual physical violence or "a credible threat of physical violence." Fulminante, 499 U.S. at 288. Nor was there any indication that the investigating agent's statement "critically impaired" Timothy's "capacity for self-determination," Braxton, 112 F.3d at 780 (internal quotation marks omitted), or that Timothy's will "was overborne in such a way as to render his confession the product of coercion," Fulminante, 499 U.S. at 288.

Timothy argues that post-hearing testimony from his co-defendants corroborates the existence of the assertedly unlawful promise. Specifically, co-defendant William Christopher Puckett testified that he was not told about the possibility of

5

receiving a trespassing charge until after Puckett made his statement. Co-defendant Edgar Scott Williams, IV, also testified, albeit somewhat contradictorily, that he was not informed about the trespassing charge until after he made his statement. Finally, at a separate suppression hearing, the district court considered and rejected a claim from Steven about the trespassing charge. This testimony, which is at best inconclusive, does not support reversal.

B.

Next, Timothy contends that the district court erred by denying his motion for a mistrial after co-defendant Puckett testified that Timothy got the money to purchase shotgun shells "from another crime we committed." We review a district court's denial of a motion for a mistrial for an abuse of discretion. United States v. Wallace, 515 F.3d 327, 330 (4th Cir. 2008).

Here, the district court immediately struck Puckett's response and admonished the jury not to "consider [the response] at all" in deliberations. In the district court's final charge to the jury, the court also told the jury that the commission of a past crime does not support the conclusion the defendant committed the charged crime.[2] Given the district court's careful

---

[2] Timothy Eddington, who was charged with possession of a firearm by a convicted felon, stipulated that he had a prior felony conviction.

6

instructions and the small part, if any, this reference played in the trial, the district court did not abuse its discretion in denying the motion for a mistrial. See United States v. Williams, 461 F.3d 441, 451 (4th Cir. 2006) (noting that this court presumes the jury follows court's limiting instructions).

## C.

Timothy next contends that the Government's closing argument improperly shifted the burden of persuasion when the prosecutor asserted that Timothy could have called Steven's girlfriend, Christy Barnes, as a witness. We review a claim of prosecutorial misconduct "to determine whether the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002) (internal quotation marks omitted). "The test for reversible prosecutorial misconduct has two components; first, the defendant must show that the prosecutor's remarks or conduct were improper and, second, the defendant must show that such remarks or conduct prejudicially affected his substantial rights so as to deprive him of a fair trial." Id.

We have carefully reviewed the record and find no basis for relief. Given the context of the prosecutor's statements, the claim's tangential subject matter, and the district court's

7

remedial instruction, we conclude that Timothy has not shown prejudice.

D.

Next, both Appellants challenge their convictions under Count Four, which alleged that, "during and in relation to a crime of violence," they possessed pipe bombs in furtherance of such crime. (JA I 30). This court reviews a sufficiency of the evidence challenge by determining whether, viewing the evidence in the light most favorable to the Government, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. United States v. Collins, 412 F.3d 515, 519 (4th Cir. 2005); see Glasser v. United States, 315 U.S. 60, 80 (1942). We review both direct and circumstantial evidence, and accord the Government all reasonable inferences from the facts shown to those sought to be established. United States v. Harvey, 532 F.3d 326, 333 (4th Cir. 2008). We will uphold the jury's verdict if substantial evidence supports it, and will reverse only in those rare cases of a clear failure by the prosecution. United States v. Foster, 507 F.3d 233, 244-45 (4th Cir. 2007), cert. denied, 128 S. Ct. 1690 (2008). "A defendant challenging the sufficiency of the evidence faces a heavy burden." Id. at 245.

In order to prove a violation of 18 U.S.C. § 924(c), the Government must prove that the defendants (1) used, carried, or

possessed a firearm, (2) in furtherance of a crime of violence. See § 924(c)(1)(A); United States v. Jeffers, 570 F.3d 557, 556 n.7 (4th Cir. 2009). In this case, the Eddingtons argue "that possession of the pipe bombs did nothing to further the conspiracy because the conspiracy was formed, if at all, prior to the possession of the pipe bombs."[3] The Government responds that conspiracy is a continuing offense and, in this case, the bombs were made to "divert the attention of the police during the robbery."

Ample evidence supports Appellants' convictions. They purchased the materials for the pipe bombs and then assembled the bombs for use in connection with the robbery. The evidence at trial showed the conspirators discussed using the bombs as a diversion. Since the inchoate crime of conspiracy to commit robbery is itself a crime of violence, it is irrelevant that the conspirators did not actually use the bombs to complete the robbery. See United States v. Phan, 121 F.3d 149, 153 (4th Cir. 1997) ("The relevant question is whether Phan actively employed the handguns during and in relation to the conspiracy, not

---

[3] In support, the Eddingtons rely on a passage from United States v. Lomax, 293 F.3d 701 (4th Cir. 2002), suggesting the weapon had to advance or help forward the crime of violence, and United States v. Phan, 121 F.3d 149 (4th Cir. 1997), in which the defendant gave a firearm to a co-conspirator in a planned robbery.

whether the handguns were actively employed during and in relation to the robbery."); see also Jeffers, 570 F.3d at 566 n.7 (noting an "active employment" instruction is not required under the current version of § 924(c)).

E.

The Eddingtons also challenge the sufficiency of the evidence to support their conspiracy convictions. In support, they cite selected testimony by their co-conspirators to suggest that even absent the arrest that thwarted their plans, the robbery might not have occurred.

In order to establish a violation of 18 U.S.C. § 371, the Government must prove there was an agreement between two or more people to commit the crime and an overt act in furtherance of the conspiracy. United States v. Ellis, 121 F.3d 908, 922 (4th Cir. 1997). The evidence here was sufficient to support the conspiracy convictions. The conspirators engaged in considerable planning, purchased supplies, and assembled two pipe bombs. The fact that the conspirators may have had doubts about the likely success (or even the advisability) of the plan, or had not completed all of the preparations, does not call into question the sufficiency of the evidence.

F.

Finally, the Eddingtons contend their consecutive sentences under 18 U.S.C. § 844(h) and 18 U.S.C. § 924(c) are prohibited

10

by well-settled double jeopardy doctrine because their convictions for these offenses arose out of the same conduct. The Eddingtons did not preserve this issue at trial, so we review for plain error. United States v. Olano, 507 U.S. 725, 731-32 (1993). Because we conclude that Congress intended to impose consecutive sentences for these offenses, the convictions and resulting consecutive sentences do not violate double jeopardy. See United States v. Smith, 502 F.3d 680, 691 (7th Cir. 2007) (affirming, over double jeopardy objection, consecutive sentences for convictions under 18 U.S.C. § 844(i) and 18 U.S.C. § 924(c)(1)(A)); United States v. Strickland, 261 F.3d 1271, 1274 (11th Cir. 2001) (holding consecutive sentences based on the same course of conduct under § 924(c) and § 844(d) do not violate double jeopardy), cert. denied, 534 U.S. 1099 (2002); see also United States v. Challoner, 583 F.3d 745, 749-50 (10th Cir. 2009) (holding, in an appeal from the denial of post-conviction relief under 28 U.S.C. § 2255, that counsel handling direct appeal from conviction was not ineffective for failing to challenge on double jeopardy grounds consecutive sentences based on convictions under § 844(h) and § 924(c)).

11

II.

For the reasons set forth, we affirm the Eddingtons' convictions and sentences. In appeal no. 08-4799, we deny Timothy Eddington's motion to relieve counsel.

AFFIRMED